## FRIERY *v.* THE PEOPLE.

### June, 1866.

#### Affirming 54 *Barb.* 319.

On the trial of an indictment for homicide, evidence of the violent conduct of the accused on the premises of the deceased, and his exhibiting there a weapon similar to that employed in the homicide, and declaring that it "would be the death of somebody here,"—shortly before the fatal affray, is admissible as tending to indicate personal hostility.

Exceptions taken by the prisoner to proceedings on the challenge of a juror for cause, are not open to examination at his instance, on error, if he subsequently, by a peremptory challenge, excluded the juror.

Ownership of real estate is not under the act of 1847, a necessary qualification for jurors in the city of New York.

It is not a good cause of principal challenge, that a presented juror, from what he has heard or read of a particular transaction, has an opinion that a crime has been perpetrated by somebody.

When such juror is challenged for favor, it is not proper to charge the triers that he may be biased by the opinion that a crime has been committed ; but the triers should be instructed to determine the question according as they think the juror is impartial, and has no bias against the prisoner, or the contrary.

A juror, challenged for principal cause, testified that he had read of the transaction, had formed an opinion of it, not as to the guilt or innocence of the party charged, but that a party had committed the crime ; and

if the party were the prisoner he presumed him to be the guilty party ; but had not actually formed an opinion that F. (the prisoner), was either innocent or guilty of killing L. (the deceased).—*Held,* that a challenge for principal cause was not sustainable.

Proper instructions to the triers of a challenge to the favor,—stated.

The mere expression of an opinion by the officer, designated by law to summon jurors, as to the merits of a cause that may chance to be on the calendar of the court for trial, or in respect to the guilt or innocence of a party under indictment, is not matter for challenge to the array.*

The neglect of the officers of the court to pursue the directions of the statute in the mode of drawing and summoning jurors, is not, in the absence of any suggestion of fraud or of injury to a party, a ground of challenge to the array.†

Bernard Friery was indicted and tried in the court of general sessions, in the city of New York, for the murder of one Henry Lazarus. There was little contest upon the facts of the case ; and the only questions in this court related to the regularity of the proceedings.

The prisoner and the deceased kept adjoining liquor saloons in the city of New York. Several hours after midnight on January 3, the prisoner with three companions all under the influence of liquor, and in the course of a disorderly carousal, entered the saloon of the deceased ; and, after some challenges to fight had been addressed to the deceased by one of the prisoner's companions, and a remonstrance against any disturbance had been interposed by Lazarus' barkeeper, the prisoner offered to shake hands with Lazarus, but Lazarus refused, whereupon the prisoner drew a knife and stabbed him mortally, and then fled, saying, "I guess I have fixed him." When arrested Friery acknowledged he had killed him, and said he would dance at his wake. The exceptions appear in the opinion.

---

* The same rule was applied in Ferris v. People, 35 *N. Y.* 125 ; affirming 48 *Barb.* 17 ; S, C., 1 *Abb. Pr. N. S.* 193 ; decided about the same time as the case in our text ; and see Gardiner v. People, 6 *Park. Cr.* 155, 192 ; People v. McGeery, *Id.* 653 ; People v. Rogers, 13 *Abb. Pr. N. S.* 370 ; and cases in note ; People v. Mallon, 3 *Lans.* 224 ; Ruloff's Case, 12 *Abb. Pr. N. S.* 245.

† Consult also People v. Mallon, 3 *Lans.* 224 ; People v. Allen, 43 *N. Y.* 28 ; and *L.* 1872, c. 475 ; under which an opinion or an expression thereof is not necessarily ground of challenge for principal cause.

*The supreme court*, on a writ of error, held that the object of the statute regulations as to the drawing and summoning of jurors was not the securing an impartial array, as towards the prisoner, but the impartial distribution among the citizens of the onerous duty of jury service. The other questions they also determined against the ·prisoner on the same grounds as those taken in the opinion of this court. They accordingly affirmed the conviction. (Reported in 54 *Barb.* 319.)

The defendant brought a writ of error to this court.

*John Sedgwick* and *John McKeon*, for the plaintiff in error; —That the statute as to jury was imperative,—Cited *Dwarr.* 715; Striker *v.* Kelly, 7 *Hill*, 9; Marchant *v.* Langworthy, 6 *Hill*, 646; Rex *v.* Loxdale, 1 *Burr.* 447; Perry *v.* Hulse, 9 *Cow.* 435; Gardner *v.* Turner, 9 *Johns.* 261; Queen *v.* O'Connell, 9 *Jur.* 27; 11 *Clark & Fin.* 1 *Cox Cr. Cas.* 441; Precedents in 4 *Chit.* 310; *Crown Circ. Compan.* 104; Rex *v.* Dolby, 1 *Car. & K.* 238; 1 *Crawf. & D.* 125; 2 *Moody & Scott,* 41; *Joy on Juries,* 126; People *v.* Cancemi, 18 *N. Y.* 129; Cunningham *v.* Cassidy, 17 *Id.* 278; People *v.* Cook, 14 *Barb.* 293; 8 *N. Y.* 67; U. S. *v.* Wyngall, 5 *Hill,* 51; Jackson *v.* Young, 5 *Cow.*     269; People *v.* Dawson, 25 *N. Y.* 405; People *v.* Ransom, 7 *Wend.* 418; Wakeman *v.* Sprague, 7 *Cow.* 721; People *v.* McClosky, 5 *Park. Cr.* 5, 308. That the challenges to the jurors should have been sustained; King *v.* Edmonds, 4 *B. & Ald.* 492; People *v.* Hunyman, 3 *Den.* 122; People *v.* Freeman, 4 *Id.* 13; Lowenberg *v.* People, 27 *N. Y.* 342; People *v.* Knickerbocker, 1 *Park. Cr.* 303.

*A. Oakey Hall,* district-attorney, for the people.

BY THE COURT.—WRIGHT, J.—[After recapitulating in detail the circumstances of the homicide and showing that the evidence, which was undisputed, disclosed a clear case of murder:]

Under the statute of 1855 (*L.* 1855, p. 613, c. 337, § 3), our jurisdiction extends to ordering a new trial, if satisfied that "the verdict was against the weight of evidence or against law,

or that justice requires a new trial." Manifestly, there was no injustice in this case, in the verdict of the jury; the evidence and the circumstances under which the homicide was perpetrated, called for no other; it was, in truth, a case of wanton killing without any provocation. It cannot be contended, for a moment, that the accused did not design to kill. Not under the impulse of sudden passion (for there had been no provocation to arouse it), he comes upon the deceased, and with inhuman and fiendish spirit and intent, plunges a deadly weapon, that had been before concealed upon his person, into a vital part of the neck of his victim; it is very clear that unless the accused was prejudiced in his trial by some erroneous legal ruling, "justice does not require" a reversal of the conviction. Various exceptions and objections were taken on the trial. Some of them are insisted on as valid in the points of counsel, but none were confidently urged on the argument as errors of a nature to demand a new trial, except the one relating to the drawing and summoning of the extra panel of one thousand jurors for the term of the court at which the trial was had. These objections, however, insisted on now, though not urged at length, and which relate to the impanneling of the jury and the admission and rejection of evidence, will be briefly noticed, before attending to what is claimed to be a fatal error in the ease. I think it will be seen that none of them are tenable.

1. *The rulings of the court as to evidence.* It appears that although the accused and the deceased were maintaining the same kind of business, the former, from some unexplained cause, was in the habit or visiting the latter, and there drinking himself and treating strangers to drinks. Between four and five o'clock of the morning before the homicide, he made one of these visits; he had with him a two-edged dagger knife, having a blade seven or eight inches long. Leaning against the counter, he drew the knife from his pocket and plunged it into the counter saying, "that will be the death of somebody around here before long," or "somebody here;" Lazarus was not present. On the evening of the same day (Lazarus being absent), he came in again, stepped to a lunch table; eat something; seized the mustard cup from the table, threw it across the room and left the premises. About two weeks be-

fore the homicide, between seven and eight o'clock in the morning, he came in with one of his companions, and called for a drink; there was a Newfoundland dog, kept by Lazarus, lying sick under the table; before drinking he took an ice pick from his pocket, and hit the dog three or four times on the head, then, taking part of his drink, he commenced beating the dog again, and thrust the sharp end of the ice pick into the dog's mouth, breaking out some of his teeth. He was finally persuaded by his companion to desist. These several acts and declarations of the accused upon the premises, and with the property of Lazarus, were, under objection, allowed to be proved by the prosecution.

This was not error. The evidence was admissible as bearing upon the question of malice in the commission of the crime with which the prisioner was charged. Proof of exhibiting at the scene of the homicide, the morning before its perpetration, the identical weapon with which the fatal blow was given, accompanied by the declaration, " that that would be the death of somebody around here before long," was not only competent, but exceedingly pertinent testimony. The occurrence as to the dog was of lighter weight, but still it was not incompetent testimony. • Proof of any act of the accused in reference to the deceased, or his property, about the time of the fatal occurrence, indicating, or tending to indicate, feelings of personal hostility, toward the deceased, was competent.

2. On the cross-examination of Lazarus' bar-keeper, he was asked, " Did a part of the custom of that house come from women ?" The question was objected to as irrelevant and immaterial, and excluded under exception. There is no point in the exception. It was of no sort of importance what were the classes or sex of the customers of Lazarus.

3. It appeared, as has been stated, that just before leaving for Lazarus' saloon, Clark, McDonald, California Jack and the accused were together in the bar-room of the latter. On the examination of a witness on the part of the accused, he was asked, " Do you know what, if anything, was said between California Jack, Clark, McDonald and Friery, in his (Friery's) bar-room ?" The district-attorney objected to the question, and the objection was sustained. It is unnecessary to say a

word in justification of this ruling. It was utterly immaterial what they talked about as affecting any issue in the case.

4. Six persons drawn as jurors were challenged for principal cause by the counsel for the prisoner. The court held that the challenges were not sustained by the evidence adduced in their support, and they were challenged peremptorily by the prisoner. Two others so drawn were challenged for favor, and found by the triers to be indifferent, and were peremptorily challenged by the prisoner. Two others so drawn were, in the first place, challenged for principal cause by the prisoner's counsel.

The court found the causes of challenge untrue. They were then challenged for favor, and found indifferent by the triers. These were, also, peremptorily challenged by the prisoner. In each of these cases, exceptions were taken to overruling the challenges for principal cause; and also to the charges or instructions of the recorder to the triers.

It is now urged that these exceptions are open for examination and review, and that if there were error in the proceedings upon the challenges for cause, though the jurors were ultimately excluded by the peremptory challenges of the prisoner, he is entitled to a reversal of the judgment.

This is not so. Questions raised previous to the peremptory challenge of these jurors, are not open for examination at this instance. As was said by the distinguished judge, in delivering the opinion of the court, in the case of Freeman v. People, 4 *Den.* 9, "The prisoner had the power and the right to use his peremptory challenges as he pleased, and the court cannot judicially know for what cause or with what design he resorted to them. He was free to use or not use them, as he thought proper: but having resorted to them, they must be followed out to all their legitimate consequences. Had he omitted to make peremptory challenges, his exceptions growing out of the various challenges for cause, would have been regularly here for revision. But he chose by his own voluntary act to exclude these jurors, and thus virtually, and, as I think, effectually, blotted out all such errors, if any, as had previously occurred with regard to them." All questions in respect to the ten jurors mentioned (the proceedings on the challenges of whom for

cause, are set forth at large in the bill of exceptions) are out of the case. The accused, having used his peremptory challenges, having chosen by his own voluntary act to exclude them, cannot be heard to allege exceptions, if any, existing as to those jurors prior to such challenges.

Eight persons, however, were drawn and served as jurors, to whom challenges were interposed by the prisoner's counsel, and it is to be seen whether any error occurred with regard to them, either in overruling the challenges for principal cause, or in the recorder's charges to the triers.

*First.* James R. Davies, on being called, was challenged on the ground that he did not own real estate, and had not been taxed for personal estate. The juror testified that he did not own any real estate, had not yet been taxed for it, but expected that he would be during the year. The recorder overruled the challenge. This was not error. The provisions of the Revised Statutes respecting property or assessment qualifications of jurors (2 *R. S.* 411, § 13), were repealed, as to the city of New York, by and act passed in 1847, entitled " An act in relation to jurors in the city of New York." 2 *L.* 1847, p. 734, c. 495.*
That act declared, that it should not be necessary as a qualification for any juror in the city of New York, that he should be actually assessed therein; but that all persons, residing in the city, who should be qualified to serve as jurors, and not exempted by any of the laws of the State, should be selected as such, whether they had been assessed or not. The objection to the juror was therefore untenable.

*Second.* Charles E. Hadden, on being called, was challenged for "principal cause." The bill of exception does not show, in terms, what cause of challenge was alleged, but from the scope and character of the evidence, it seems to have been that the juror had formed an opinion *that a crime had been committed.* The juror testified in substance, on being interrogated by prisoner's counsel, that from the general conversation in the court room, and from what he had heard over the bar, he had formed an opinion that a crime must have been committed,

---

* For the present act as to New York city, see 2 *L.* 1870. p. 1293, c. 539; 2 *L.* 1872, p. 1226, c. 535,

but had no impression whatever whether the party who is indicted is the party who did the thing.

The challenge was properly overruled by the court. It is not a good cause of principal challenge, that a presented juror, from what he has heard or read of a particular transaction, has an opinion that a crime has been perpetrated by somebody. The juror was then challenged for favor, and the triers passed upon this challenge upon the same testimony; the prisoner's counsel requesting the court to charge the triers, that if the juror had made up his mind that a crime had been committed, he might be biased by that, although he had no impression as to who committed it. The recorder declined to give the instructions requested, but charged the triers as he had before charged, in general terms, that if they thought, after hearing the testimony of the juror, that he has a bias against the prisoner, they must say the challenge has been sustained; if they say, he is impartial and has no bias, they must say the challenge has not been sustained. There was no error in refusing to give the instructions requested, but on the contrary, the instructions given were guardedly correct. In fact there was nothing in the evidence to support the challenge to justify the request. There was not a scintilla of proof tending to show that the juror challenged had made up his mind even upon the abstract question of whether a crime had been committed.

*Third.* Nathan Brewster, on being called, was challenged for principal cause. On being interrogated by the prisoner's counsel, he testified that he had read something of the transaction at the time of its occurrence, referring to the homicide of Lazarus, but had formed no opinion about it. From what he read he thought there had been some crime committed. On being interrogated by the court, he further testified that he had formed no opinion at all as to whether the prisoner is guilty of the crime with which he is charged. The challenge is overruled.

It is claimed in the points of the prisoner's counsel, that the court should have rejected this juror, for the reason that he had read something of the transaction, and had formed an opinion that a crime had been committed. There was nothing to show that the juror had formed any opinion in respect to

the transaction, either as to its legal character or as to the guilt or innocence of the accused on trial; but it may as well be said, once for all, that it is no sufficient ground of principal challenge that a proposed juror, from reading or hearing of a particular homicide, gets an impression on his mind, or concludes that a crime, and one of murder, had been committed, without any reference as to who was the perpetrator. The law has not reached the point of positively disqualifying a juror for forming or expressing an opinion as to the legal character of a given transaction,—*e. g.*, whether, as in this case, the killing of Lazarus was a criminal act,—irrespective of any opinion or knowledge as to who committed the act.

*Fourth.* John Wood, on being called, was first challenged for principal cause. He testified, on examination of prisoner's counsel, that he had read of the transaction in the papers; could not say that he had formed any opinion as to the guilt or innocence of the party charged; formed the opinion that the party had committed a crime. On the question being put to him by the district attorney, whether he had actually formed an opinion that Bernard Friery was either guilty or innocent of killing Harry Lazarus? he answered no. The challenge was properly overruled. The juror had formed no opinion either as to the guilt or innocence of the accused on trial. He had read an account of the homicide in the papers, and had come to the conclusion that the party charged had committed a crime. This, as has been said, did not legally disqualify him.*

The juror was then challenged for favor, and further exam-

---

* The examination of Wood, upon challenge by the prisoner for principal causes, was as follows :

Q. Have you read of this transaction ?

A. I have.

Q. Have you formed an opinion as to it ?

A. Yes, I have.

Q. As to the guilt or innocence of the party charged?

A. I cannot answer as to the guilt or innocence. I formed the opinion that the party had committed a crime.

Q. Then, if the party was the prisoner, you have formed an opinion ?

A. I presume he is the guilty party. I would have an opinion, if he is the prisoner.

By the District-Attorney :

ined, both by the prisoner's counsel and the district-attorney. The recorder charged the triers, in substance, that it was for them to determine whether the juror was indifferent between the prisoner and the people; that no rule of law could be laid down to determine this with unerring certainty; it was not a question to be solved by any rule of law, but by the common sense of the triers. They were to hear what the person called as a juror answers; to look into his mind, to see its condition, and if, after examining that, they come to the conclusion that he is impartial between the prisoner and the people, has no bias one way or the other, it was their duty to say that he is competent, and that the challenge is not sustained. But, if after considering the state of his mind, they find to the contrary, that he was not indifferent, they should say so, and sustain the challenge.

These instructions were unexceptionable.

*Fifth.* John H. Hazen, on being called, was challenged in the first place, for principal cause. On being interrogated, he answered in substance that he had read of this matter (the in-

Q. Have you actually formed an opinion that Bernard Friery is either guilty or innocent of killing Harry Lazarus?

A. No.

The court ruled that the challenge for principal cause was no sustained.

Upon challenge by the prisoner for favor, the same juror testified:—

Q. Did you have your mind made up as whether or not a crime had been committed?

A. Yes.

Q. You still have an opinion as to that?

A. I still believe that a crime had been committed.

Q. You believe that the party who was charged was guilty of that?

A. I cannot answer that question.

Q. I mean, charged by the papers, not charged here.

A. I can only recollect the names of two parties.

Q. Who were they?

A. Harry Lazarus and Bernard Friery.

Q. Who was Harry Lazarus?

A. He was the party charged to have been killed.

Q. Who was Bernard Friery?

A. The party who committed the deed.

Q. You believed that he did it?

A. I have no belief on the subject. I know that the paper said so.

terrogatory probably referring to the matter on trial, though not in terms stated) ; he did not know but he might, at the time he read of it, have formed an opinion on this matter ; his memory was rather treacherous; should not have remembered the principal facts stated in the newspapers, if he had not heard them recounted since he had been in the court room ; had no impression or belief as to whether what he read in the paper was true or not ; did not recollect of having any impression as to whether the party charged by the newspapers did what the newspapers said he did. The challenge was overruled properly, as there was not a scintilla of evidence to support it.

*Sixth.* Benjamin F. Eaton, being called, was challenged for principal cause. He testified that he heard the matter spoken of at the time, and thinks he must have said something about it, but is not positive ; thinks it must have been something like this: that if the party charged did commit the murder, he ought to be punished ; and if the principal facts were true that he heard, he has that opinion now. On being interrogated by the district-attorney, he stated in substance, that from a con-

Q. From that, did you not make up your mind that he did it ?

A. I had a presumption that he was the party.

Q. You have that still, have you not ?

A. Yes.

Q. You have a presumption that Bernard Friery committed a crime ?

A. I have—unless the evidence should change that.

Q. You would need some evidence to change it, would you not ?

A. Yes, certainly.

By the District-Attorney:

Q. I understand you have an impression, if the facts you read in the papers were true, that Friery was probably guilty ?

A. If they were true.

Q. But, suppose it should turn out that it was not true, you could acquit him, could you not ?

A. Certainly.

Q. Suppose it should turn out that Bernard Friery killed Lazarus because it was necessary to protect his own life, would you not render a verdict accordingly ?

A. Certainly.

Q. In other words, you have no impression derived from what you have heard that would bias your mind against the sworn evidence you would hear as a juror ?

A. No.

versation in the shop (where was all he heard about it), he had derived an impression that some one had killed Lazarus, but who was the person charged with the killing he did not know; it might have been told to him, but he had no remembrance of it; thinks he has an impression that somebody was taken up for it, but does not remember the name or anything about the man; had no fixed opinion in his mind founded on what he heard talked of; that the man, whoever he was, that was taken up, was guilty or innocent of killing him. The challenge was properly overruled. It was totally unsustained by the evidence. The person had no opinion as to the guilt or innocence of the accused. In fact, he had nothing that would be called an opinion, or even an impression of the mind, upon any feature of the case.

*Seventh.* William H. Hicks, being called, was challenged for principal cause. He testified that he had read and talked of the matter, but had formed no opinion as to it; thinks he has formed an opinion as to whether a crime was committed, but has never expressed it. His opinion that a crime was committed, attaches to no individual; the challenge was overruled. It is unnecessary to repeat what has been before said, that the formation or expression of an opinion as to the legal character of a given transaction, attaching criminality to no particular individual, and especially not to the accused, who is on his trial, is no sufficient ground for principal challenge.

*Eighth.* Charles F. Newton, on being called, was challenged for principal cause. He testified that he had read about the matter in the *Herald;* his reading did not lead him to the formation of any opinion; he had an opinion from the reading, that a difficulty had occurred in a drinking saloon between two parties, the result of which difficulty was that a person was injured, and afterwards died; he believed that was a crime; to the best of his recollection, the article in the newspaper charged some person with the act which caused the death; the challenge was overruled. I imagine it would be difficult to assign any valid reason for rejecting this juror. The evidence fell short of sustaining even the favorite point of the prisoner's counsel, that he had formed an opinion from reading an account

Friery v. People.

of the affair in the newspaper, that a crime had been com-
mitted.

I have thus gone through at length the same proceedings on
the challenges of the persons sworn as jurors. In my opinion
there was no pretext for alleging error, either in the recorder's
decisions of the principal challenges, or in his instructions to
the triers, when challenges were interposed to the favor. In
the former the challenges were not sustained by the evidence,
and in the latter the judge's instructions were guardedly cor-
rect and remarkably free from usurpation of the triers' province.
There was no error in deciding or sustaining or instructing,
substantially, that the formation or expression of opinion, or
the possession of a bias, was immaterial, unless that such opin-
ion or bias was against the prisoner, *per se.*

The remaining matter to be considered is in respect to the
challenge to the array. The court, in addition to the regular
and usual panel, had ordered an extra panel of one thousand
jurors to be summoned for the sessions or term at which the
prisoner's trial was moved. This was done under the author-
ity of the act of December, 1847 (before referred to), creating
the office of commissioner of jurors for the city of New York,
and defining his powers and duties, section 9 of which pro-
vided that after the commissioner had completed the petit jury
list, and delivered a certified copy thereof to the county clerk,
and the clerk had prepared the ballots and deposited them in
the box in the manner required by law, "the several courts in
the city may order as many jurors to be summoned for their
respective courts as in their judgment may be necessary." *L.*
1847, c. 495. This act further provided that jurors for the
several courts in the city should, on requisition made by such
courts respectively, directed to the county clerk, "be drawn
from the petit jury box in his office, a minute of which draw-
ing shall be certified and filed with such clerk as now required,
who shall deliver a copy thereof to the officers authorized to
summon such jurors, who shall proceed to summon such jurors
in the manner now required by law." § 4. It was conceded
that the panel of jurors was to be drawn and summoned, as
directed in article 2, title 4, c. 7, third part of the Revised Sta-
tutes, entitled "Of the return and summoning of jurors." 2 *R.*

*S.* 410. The directions are to this effect: The clerk is to give notice of the drawing, and serve a copy of such notice on the sheriff of the county, and upon the first or some other judge of the county courts, three days previous to the time appointed by him therefor. At the time so appointed, it is made the duty of the sheriff, in person, or by his under sheriff and the first or other county judge on whom such notice shall have been served, to attend at the clerk's office to witness the drawing If the sheriff or county judge so notified do not appear, the clerk is to adjourn the drawing until the next day, and by written notice require the delinquent sheriff or judge, or some other county judge or any two justices of the peace, to attend such drawing on the adjourned day. If on the adjourned day, the sheriff or under sheriff and a county judge or justices of the peace appear, or if any two county judges or justices of the peace appear, but not otherwise, the clerk is to proceed, in the presence of the officers so appearing, to draw the jury. The clerk is to conduct the drawing in a prescribed way, a minute is to be kept, and each name entered thereon as drawn from the box before another ballot be drawn. After the drawing is completed a minute is then to be signed by the clerk and the attending officers, and filed in the clerk's office, and a list o the names of the persons so drawn, with their address and places of residence, and specifying for what court they were drawn, is to be made and certified by the clerk and the attending officers, and delivered to the sheriff of the county. The sheriff is to summon the persons named in such lists to attend such courts by giving personal notice to each person, or by leaving a written notice at his place of residence; and return the list to the court, at the opening thereof, specifying those who were summoned, and the manner in which each person was notified. 2 *R. S.* 413, 414. In the city of New York a copy of the minutes of the drawing, certified and filed with the clerk, takes the place of the list to be delivered to the summoning officer.

On February 13, the drawing and summoning officers named in the statute, filed their statutory certificate of compliance with the statutory forms of drawing and summoning the extra number of one thousand jurors as ordered; which was

received by the court. On the prisoner's trial being moved the same day, he interposed a challenge in writing to the array of the persons upon the panel or list of jurors this day filed in this court, alleging eight grounds of challenge, the first of which was, that the sheriff or summoning officer had formed and expressed an opinion as to the guilt or innocence of the prisoner; and the next seven grounds, a want of compliance with the statutes in respect to the jurors, viz: that the proper officers did not actually attend at, or witness the drawing; that upon the drawing from the petit juror box of the names of the persons now on the panel returned as jurors, no minute was kept by any attending officer as the drawing proceeded; that no minute of the drawing was signed or certified by any attending officer; some of the proper attending officers signed blank certificates which the clerk filled up after the drawing; no copy of the minutes of the drawing was delivered to the sheriff; the sheriff summoned the jury without any copy of the minutes being furnished him; the ballots drawn from the jury box were delivered to him from which he summoned the jurors; and the panel or list filed is not a copy of the minutes of the drawing.

There was no allegation of any fraud or corruption against any of the officers who drew or summoned the jurors, or certified to the list; nor of any injury or prejudice to the prisoner.

Upon a demurrer by the district-attorney, the court sustained it, overruled the challenge, and refused to quash the array; to which ruling the prisoner excepted.

The question is, was this error, entitling the plaintiff in error to a new trial? I am of the opinion that it was not; and that the challenge was properly disallowed.

Plainly the first ground of challenge was without substance. The idea that the mere expression of an opinion by the officer, designated by law to summon jurors, as to the merits of a cause that may chance to be on the calendar of a court for trial, or in respect to the guilt or innocence of a party under indictment, is matter for challenge to the array, is as absurd as it is novel. But this ground was not pressed or relied on in the argument at bar.

The remaining allegations related to the non-observance of certain of the statutory directions in the drawing of the panel,

the challenge averring, in substance, that the clerk drew the jury, without the officers named in the statute being actually present at the drawing; that no minute of the drawing, upon its completion, was signed and certified by the proper officers, and filed with the clerk, nor any copy of such minutes delivered to the summoning officer; but that the ballots drawn from the jury box were delivered to him by the clerk, from which he summoned the jurors, and that after such summoning the ballots were returned by the sheriff to the clerk, and the names were then entered by the latter in a book in his office as the minute of the drawing. Assuming that the truth of the facts, as stated in regard to the drawing, were admitted by the demurrer, was the non-observance of the statute directions and forms in the particulars suggested, grounds of challenge to the array by the prisoner? Certainly not, unless the purpose and intent of the statute for selecting, drawing and summoning persons as jurors were to secure an impartial jury to parties; and to that end, the regulations and forms prescribed were made imperative upon those charged respectively with the duty. In such case it would be the right of a litigant to have the statute regulations and forms strictly complied with, independent of any suggestion of fraud or misconduct. But, in my view, the statute respecting the selecting, drawing and summoning of jurors, was not intended, *per se*, to secure impartial jurors to litigants. The purpose and object of the statutory system were to secure a due and uniform distribution of jury duty, and to guard the great body of jurymen from the fraud or favoritism of the drawing or summoning officers. The statutes establish a mode for these ends, and are directory to those whose duty it is to select, draw and summon. By this system, the courts are supplied with jurors to aid in the administration of the laws. If it were held that the statutes in reference to the selecting, drawing and summoning of persons to serve as jurors were other than directory; if any of the many directions therein contained were to be deemed sufficient to vitiate the whole panel, the consequences would be that the whole fabric of justice would fall to the ground. Suppose, for example, the clerk omits to give public notice of the drawing, or the drawing takes place in the absence of those officers re-

quired to attend and witness it, after there had been an adjournment and a notification by the clerk to attend on the adjournment day, are these irregularities ground for vitiating the whole panel? If so, the business of every court in the State might be impeded if not wholly stopped. The officers named in the statute charged with the duty of attending the drawing as witnesses, by a neglect of such duty would deprive the court of jurors to aid in the administration of the laws. The system contemplates no such result, but on the contrary, was designed and intended to promote a directly opposite purpose. The omission to properly work the statute machinery by the drawing and summoning officers, is a question between the people and those officers; because any fraud or partiality, or improper conduct of such officers injured the public, such conduct was made a misdemeanor. 2 *R. S.* 694, § 18. The machinery may be perverted so as to injure litigants, but in such a case it is the acts of perversion that become cause for challenge and not the mere omission to properly work the machinery, when no injury or prejudice comes to litigants.

The challenge in this case merely alleges a defective working of the drawing machinery, without its terms imputing a perversion thereof to the injury of the accused. It not only omitted express allegations of prejudice to the accused, by the acts or omissions complained of, but showed on its face that by means of the imputed irregularities the same jurors were arrayed who would have been on the panel if every imputed omission had been supplied, or if every act had been technically regular. It asserts, in terms, that the very ballots which were drawn from the box by the clerk, were handed to the sheriff, and each juror whose name was on each ballot was summoned That the jurors were fairly drawn from the box, and that the same persons were drawn and summoned that would have been had the proper officers attended and witnessed the drawing, is to be assumed, since no allegations to the contrary is contained in the written challenge.

I am of the opinion, therefore, that it was not error to disallow the challenge and refuse to quash the array. The acts and omissions complained of, the mere defective working of the statute machinery by the drawing and summoning officers, in

the absence of any suggestion of fraud or misconduct prejudicing litigants, or any misconduct, save a neglect or omission to strictly observe the prescribed regulations, is not ground of challenge to the array.

The judgment should be affirmed.

A majority of the judges concurred.

Judgment affirmed, and record remitted.