[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 415 
The prisoner alleges that the indictment charges only the offense of murder in the second degree. It does not allege that the killing was from a premeditated design to effect the death of any human being, nor that it was perpetrated by an act imminently dangerous to others, evincing a depraved mind regardless of human life, nor that it was perpetrated in committing the crime of arson in the first degree. The killing is charged to have been by "willfully, maliciously and of malice aforethought" shooting the said Ellen Hicks upon her body, and inflicting upon her a wound from which she speedily died. This, the prisoner insists is a charge of murder in the second degree only, and that the sentence and judgment, rendered upon a general verdict of guilty, are erroneous.
The killing of any human being, without the authority of law, is declared by the Revised Statutes (omitting the distinctions *Page 416 
in reference to manslaughter and excusable or justifiable homicide), to be "murder" in the following cases:
1. When perpetrated from a premeditated design to effect the death of the person killed or of any human being;
2. When perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual;
3. When perpetrated without any design to effect death, by a person engaged in the commission of a felony. (2 R.S. 657, § 5.)
The case of The People v. Enoch arose soon after the passage of these statutes. (13 Wend. 159.) Enoch was indicted for murder upon a charge that on, etc., he did, with force and arms, "feloniously, willfully and of his malice aforethought," shoot and kill his wife, Nancy Enoch. He was convicted and sentenced to be hung. Upon a writ of error brought, it was insisted by his counsel that the verdict and sentence could not be upheld, because a common law indictment "with malice aforethought" could be sustained by proof of killing, without a design to effect death, if such death happened in the perpetration of a crime or misdemeanor not amounting to felony, whereas by the Revised Statutes such an offense did not amount to murder. (2 R.S. 657, § 6.) The judgment was affirmed by the late Supreme Court, and upon appeal to the Court of Errors, was affirmed by that court also. The Supreme Court say that the first subdivision was intended to define murder in the case of express malice, and the second and third subdivisions in cases of implied malice. Judge NELSON (p. 165) uses this language: "Malice aforethought, in common parlance, and as originally used, conveyed only the idea of express malice. Its meaning had been enlarged, so as to include implied malice, by judicial construction; to define and limit which was the object, and has been the only effect, of the fifth section above referred to. It was said on the argument that under this indictment, the jury might have convicted the prisoner upon proof of implied malice, which, since the *Page 417 
Revised Statutes, would only amount to manslaughter, but which evidence would sustain the terms of the indictment `malice aforethought,' and justify a conviction of murder from implied malice at common law. So it might have been said before those statutes on a conviction of murder upon a similar indictment, that the jury might have convicted the prisoner upon proof, which did not amount to murder, but only to manslaughter, as evidence of the latter offense was admissible under it. * * The answer to all this is, that it is the business and duty of the court to see that a proper direction be given to the jury in point of law upon the evidence, and if either court or jury err, the appropriate remedy must be sought." He proceeds: "The statute has not altered the common law. The offense of murder, as defined in the Revised Statutes, was so before the statute, and is but the adoption or introduction into the act of the common law definition of the crime. The sixteenth section limits the offense to the cases mentioned in the fifth section, above cited, or in other words, abolishes the offense at common law except in those cases, and they are left as before existing in our Criminal Code. The cases of murder from implied malice have been limited by the second and third subdivisions of the fifth section, but those there defined existed before. The crime of murder might have been committed before the Revised Statutes, from implied malice, where the prisoner, while engaged in an unlawful act under the degree of felony, such as a riot or other misdemeanor, killed another against his intention. By the third subdivision, such unlawful act must now be of the degree of felony. This is the only modification of the law of murder. The rule that the indictment should bring the offense within the words of the statute declaring it, is applicable only in its strict terms to cases where the offense is created by statute or where the punishment has been increased, and the pleader seeks to bring the prisoner within the enhanced punishment."
In the Court of Errors (at p. 173, et seq.) the chancellor reiterates these views at length, and concludes by saying: *Page 418 
"From this examination of the subject, I have arrived at the conclusion that a common law indictment for murder is proper under the provisions of the Revised Statutes, and a defendant cannot be convicted on such an indictment of a felonious homicide with malice aforethought, unless the evidence is such as to bring the case within the statutory definition of murder." (p. 176.) InThe People v. White (24 Wend. 520) the late Court of Errors held, that, when an indictment charged the killing to be feloniously, willfully, of malice aforethought, and from a premeditated design to effect death, the premeditated design or express malice must be proved, but affirm and approve the case of Enoch. In The People v. Clark, decided in this court in 1852 (3 Seld. 385, 393), JOHNSON, J., uses this language: "The words `premeditated,' `aforethought,' and `prepense,' possess etymologically the same meaning; they are, in truth, the Latin and Saxon synonyms expressing a single idea, and possess in law precisely the same force. The statute, so far as this term is concerned, has not altered the law. `Malice prepense,' however, had attained a broader meaning than belongs to the term `premeditated design.' The intent to take life was not necessary to constitute malice prepense. Even express malice, or malice in fact, is defined to be a deliberate intention of doing any
bodily harm to another, unauthorized by law (Hale's P.C. 451), and by no means necessarily involved an intent to take life. * * The degree of deliberation is not different from that required by the common law. * * It is enough that the intention precedes the act, although that follows instantly."
In 1862 (Laws 1862, ch. 197, p. 369) the law on the subject of murder was re-enacted, and was altered in its third subdivision. By the Revised Statutes, as already quoted, it was provided that the killing should be murder in the cases specified, of which the last was as follows: "3. When perpetrated without any design to effect death, by a person engaged in the commission of a felony." By the statute as altered, it was made to read as follows: "3. When perpetrated in committing the crime of arson in the first degree. *Page 419 
Such killing, unless it be murder in the first degree, or manslaughter, or excusable or justifiable homicide, as herein after provided, or when perpetrated without any design to effect death, by a person engaged in the commission of any felony, shall be murder in the second degree." By this amendment, a killing, when perpetrated in committing the crime of arson in the first degree, still constituted the offense of murder in the first degree. When, however, the killing was perpetrated without any design to effect death by a person engaged in the commission of a felony, other than that of arson in the first degree, it was murder in the second degree only. This was the entire effect of the amendment of 1862. This section is obscure, and has been sometimes read as if the words "or when perpetrated without any design to effect death by a person engaged in the commission of any felony," formed an exception, like the words "or manslaughter" or "justifiable homicide." Upon this construction no crime of murder in the second degree is created. The very crime intended to be thereby created is by this construction declared not to be such crime. A more reasonable construction should be put upon the language, and effect given to the evident intention of the legislature. The statute may be thus paraphrased: "The killing of a human being shall be murder in the first degree — first, when perpetrated from a premeditated design to effect the death of the person killed or of any human being; second, when perpetrated by an act imminently dangerous, etc.; third, when perpetrated in committing the crime of arson in the first degree. Such killing, unless it be murder, or manslaughter, or excusable or justifiable homicide, as herein after provided, shall be murder in the second degree, when perpetrated without a design to effect death, by a person engaged in the commission of any felony." This was the evident intent of the framers of the statute, and in my judgment is a justifiable construction of the language. Or, again, it may be read thus: "Such killing, when perpetrated without any design to effect death by a person engaged in the commission of any felony, shall be murder in the second degree, unless it be murder in the first degree (as above *Page 420 
defined) or manslaughter, or justifiable or excusable homicide, as herein after provided."
The punishment of murder in the second degree is fixed by section eight, as an imprisonment in a State prison for a period of not less than ten years.
The crime of manslaughter in the first, second and third degrees, is defined by the statutes, and the punishment is fixed at confinement in the State prison, at periods ranging from two to seven years. The nineteenth section of the statute provides that every other killing of a human being shall be deemed to be manslaughter in the fourth degree. The punishment of this offense is by imprisonment in a State prison for two years, or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding $1,000, or by both such fine and imprisonment.
It has been suggested that the killing of a human being, when perpetrated without a design to effect death, by a person engaged in the commission of a felony, might be punished within the terms of section nineteen, making it the offense of manslaughter in the fourth degree. This would be quite unwarrantable, when we consider the very slight degree of punishment inflicted by that section, compared with the magnitude of the offense, and the greater punishment inflicted for the commission of much lighter crimes, as defined by the three preceding degrees of manslaughter. It is clear, therefore, that, unless the crime of murder in the second degree consists in what I have defined it to be, it is entirely unprovided for in the statute. This is an absurdity not to be tolerated.
The prisoner's argument in legal effect is this: that he is charged by the indictment with an offense which may be found by the jury to be either murder in the first degree or murder in the second degree; that the jury have found a general verdict only against him; that this may have been founded upon facts which would justify a conviction of the minor offense only; and that therefore a judgment based upon a verdict as for the greater offense is erroneous. The decision in The People v. Enoch,
already cited, is decisive *Page 421 
against this argument. In that case it was charged that the defendant killed his wife feloniously and of malice aforethought, the words "with premeditated design" being omitted. The law had then been so altered by the Revised Statutes, that a killing which occurred in commission of a misdemeanor simply, was not murder. It would be manslaughter merely. Malice aforethought embraced a class of offenses which did not then constitute the crime of murder. The prisoner then stood indicted for an offense which might be murder or might be an inferior offense, and yet upon a general verdict of guilty and a judgment inflicting the punishment of death, the Court of Errors sustained the judgment. The chancellor gave the answer which I have already cited, "that it is the duty of the court to see that a proper direction be given to the jury in point of law upon the evidence, and if either court or jury err, the appropriate remedy must be sought." This is equally true in the present case. No objection is taken to the charge of the judge in the present case, and we are to assume that the judge explained to the jury the law of murder in its different degrees and the law of manslaughter as defined by the statute, and that the jury rendered an intelligent verdict upon such understanding of the statutes. If this case had contained the charge of the judge, in which it had been stated, that, to constitute murder in the first degree, it must appear to them that the killing was from a premeditated design to effect the death of a human being, or that it was perpetrated by an act imminently dangerous to others, evincing a depraved mind, regardless of human life, or when committing the crime of arson in the first degree; and that if perpetrated when engaged in the commission of any other felony, it would be murder in the second degree only, the charge would have been correct, and a general verdict would have justified the sentence given. We are to presume that the law was thus explained to the jury, and that they fully appreciated the effect of their verdict. The absence of an objection admits it.
It has always been held to be the law that upon an indictment charging the offense of murder and nothing else, *Page 422 
the prisoner might be convicted of manslaughter. The same allegations in the indictment would maintain a conviction for murder, or would justify a verdict of manslaughter merely. The result depends upon the proof, the direction of the judge, and the opinion of the jury. As these elements require a conviction of the greater or minor offense, such will be the result. As the same elements require a conviction of murder in the first degree, or of murder in the second degree, such will be the result.
The case of Enoch has stood as the law on this subject for more than thirty years. To overrule it would be a rash overthrow of a settled authority, under which many persons have suffered the extreme penalty of the law. The objection on which the prisoner's argument is based, is purely technical; it is not even suggested that the law was not accurately explained to the jury, or that his rights were not properly guarded. The judgment should be affirmed.