CHASTINE COX, Plaintiff in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

A challenge to the array of jurors upon a criminal trial is not within the provision of the statute (2 R. S., 731, § 1), which declares that no plea in abatement or other dilatory plea to an indictment shall be received, unless the truth thereof be proved.

*It seems*, that if a verification of the challenge is required, a demurrer to the challenge is not a proper way to raise the objection of want of verification.

Mere irregularities in the drawing of grand and petit jurors do not furnish a ground for reversing a conviction, unless it appears that they operated to the injury or prejudice of the prisoner.

Upon the trial of an indictment for murder the prisoner's counsel interposed a challenge to the array of jurors, in writing, signed by the prisoner, denying the performance by the proper officers of the various acts and duties imposed upon them by the jury law. The district-attorney demurred orally to the challenge on the ground, among others, of omission of the prisoner to verify the same. The court sustained the demurrer and overruled the challenge. The jurors were then called, and all who answered to their names were either excused or peremptorily challenged, except three, who took their seats in the jury box, but were not sworn. Subsequently, and before the jury

were sworn, the court announced to the prisoner's counsel that it had concluded to allow him to renew the challenge, and to accept it without a verification, and upon its traverse would proceed to try the issues raised thereby; also that it would let the jurors in the box stand aside. The district-attorney thereupon offered to traverse the facts alleged in the challenge, if renewed, and to consent that the jurors might stand aside. The prisoner's counsel declined to accept the offer of the court, and insisted upon going on with the trial; the jury was thereupon completed; two of the jurors who sat in the case were selected from the panel to which the challenge was interposed. *Held,* that assuming the facts alleged in the challenge constituted in law a good ground of challenge to the array, and that the demurrer was erroneously sustained, the prisoner, by declining to accept the offer, and by insisting that the trial should proceed, precluded himself from insisting upon the exception to the ruling, and must be regarded as having abandoned his challenge.

*It seems,* that where, upon the trial of an action, either civil or criminal, the court corrects, or offers to correct, an erroneous ruling, and the party against whom it was made refuses to consent to the correction, or to avail himself of the offer, an exception to the ruling will not be available on appeal, provided the appellate court can see that the acceptance of the offer would have relieved the party from any actual or possible injury in consequence of the erroneous ruling.

A juror, who was challenged for cause and for favor, on being examined by the prisoner's counsel, testified that he had read of the case and had formed a decided opinion as to the guilt of the prisoner, which would require evidence to remove, and that if sworn as a juror he would enter the jury box with this opinion. On his examination by the district-attorney he testified, in substance, that his opinion was formed from having read in the newspapers accounts of the transaction; and, among other things, a statement purporting to be a confession by the prisoner of the crime; that he accepted this account as true, for the reason that he had read nothing to the contrary, and that he believed statements in the newspapers, which were not unreasonable, until they were contradicted, and in that sense he had an opinion of the guilt of the prisoner; that he had no knowledge whether the statements he read were true or not, and that his opinion was a contingent one, based on the supposed truth of the statements; that he had no pride of opinion, and had no doubt of his ability to set aside the opinion he had on entering the jury box and to decide the case according to the evidence, without being influenced thereby, or by what he had read. *Held,* that the challenges were properly overruled.

The specification in the act of 1876 (chap. 333, Laws of 1876), of the cases which shall be deemed murder in the first degree, does not necessarily require a change in the form of an indictment; and a conviction under a common-law indictment, of murder in the first degree, is proper where the offence proved is brought within either of the statutory definitions.

Under the provision of said act, which declares the killing of a human being, "when perpetrated by a person engaged in the commission of a felony," to be murder in the first degree, an intent to kill is not a necessary ingredient of the crime; the killing if done by the accused while engaged in the commission of a felony, constitutes the offence although casual and unintentional.

It is not necessary, therefore, to aver an intent to kill, in an indictment charging the killing to have been done while the accused was engaged in the commission of a felony.

An indictment is good in form which describes the offence in the language of said provision.

*It seems*, that the technical words "malice aforethought," essential in an indictment for murder at common-law, are not necessary in an indictment framed under either of the specifications contained in said act of 1876.

Evidence of confessions made by a prisoner after his arrest in another State, to the police officer making the arrest, when not induced by any promise or threat, and voluntary on his part, is competent.

It is not sufficient to exclude a confession by a prisoner that he was under arrest at the time, or that it was made to the officer in whose custody he was, or in answer to questions put by him, or that it was made under hope or promise of a benefit of a collateral nature.

Some of the counts of the indictment charged that, while engaged in the commission of the crime of grand larceny, the prisoner assaulted the deceased, and "in some way and manner, and by the use of some means and instruments to the jury unknown," killed her. *Held*, that a conviction under these counts was proper, where the evidence showed, and the jury found, that the deceased died from fright, superinduced by the violence of the prisoner; that it was not necessary to show that the actual personal violence was the sole and immediate cause of the death, nor was it necessary to allege in the indictment, that the death was by fright occasioned by the acts of violence.

After the jury had been charged, that if they believed that the deceased died from fright, and not from any violence of the prisoner, they might acquit; his counsel requested the court to charge, "that the possibility of death by natural causes must be excluded by the circumstances of murder in the first degree." The court refused to charge other than it had charged. *Held*, no error; that the possibility of death from any cause other than the act of the prisoner would not require an acquital, if the evidence satisfied them beyond a reasonable doubt, that such act did cause the death, or produced the fright which caused it.

(Argued March 2, 1880 ; decided April 6, 1880.)

Error to the General Term of the Supreme Court, in the first judicial department, to review judgment, affirming a judgment of the Court of General Sessions, in and for the

city and county of New York, entered upon a verdict, convicting the plaintiff in error of the crime of murder in the first degree. (Reported below, 19 Hun, 430.)

Most of the material facts are set forth sufficiently in the opinion.

Upon the trial certain confessions of the prisoner were admitted in evidence under objection and exception.

The first confession was made at the station-house in Boston to the police officer who arrested the accused; it was objected that it was made under such inducements or influence as should have excluded it. The watch of the deceased had been found upon the prisoner's person. The officer then asked him where the rest of Mrs. Hull's jewelry was. The prisoner replied that he knew nothing about Mrs. Hull's jewelry. Afterwards the officer repeated the question, and the prisoner said: "Will you do me a favor?" The officer replied: "I will if I can; I sympathize with you," or "I pity you;" "you are in a bad fix." The prisoner then requested that the officer would send his clothing and things to his mother, and not let his mother know that anything had happened to him. The prisoner then, in answer to a question put by the officer, who asked him to tell about the murder, went on to make a detailed statement of how he entered the house and what he did. The subsequent confessions were made to other parties; they were objected to on the ground that they were made after the supposed inducements held out by the officer.

*William F. Howe*, for plaintiff in error. The court erred in overruling the prisoner's challenge to the array, and in rendering judgment for the People upon the demurrer. (3 R. S., § 75, art. 2, title 4, chap. 2 [6th ed.]; *Hofheimer* v. *Campbell*, 59 N. Y., 269; *Reeder* v. *Sayre*, 70 id., 180; *Gardner* v. *Turner*, 9 J. R., 260; 2 Tidd, 779; Co. Litt., 158; *People* v. *McKay*, 18 J. R., 212.) The court erred in overruling the challenge to the favor to the proposed jurors, Dumahout and Howard, and in permitting them to be.

sworn as jurors in this case. (*Greenfield* v. *The People*, 74 N. Y., 277; *State* v. *Medlicott*, 1 Green Crim. L. R., 227–240.) The indictment was defective in failing to charge the killing to have been felonious and done with malice aforethought. (2 Hale, 184–187.) It is not the duty of counsel, upon an offer, to waive an exception. (*Furst* v. *Second Ave. R. R. Co.*, 72 N. Y., 546; *People* v. *McKay*, 18 J. R., 212; 1 Archibold Crim. Pr. and Plead., 86, note 1; *People* v. *Rector*, 19 Wend., 596; *People* v. *Hammill*, 4 Parker Cr. Rep., 223; *Wilson* v. *People*, 4 id., 619; Coke C. Inst., 47; Cooley's Blackstone, book 4, v. 2, 194; 3 Inst., 47, 51; 1 Hale, 424, 425, 449; 1 Hawk. P. C., c. 31, § 3; Kely, 127; Fost., 257; Plowd., 261; 2 Hale, 186, 187; *Bradley* v. *Banks*, Yelverton, 205; *Com.* v. *Gibson*, 2 Va. Cases, 70; *Sarole* v. *Slote*, 28 Miss., 268; *Edwards* v. *Slote*, 6 Cold. [Tenn.], 5; *Com.* v. *Chapman*, 11 Cush., 422; *R.* v. *Nicholson*, 1 East P. C., 346; *Maile* v. *Cam.*, 9 Leigh, 661; Wharton on Hom., § 809; *State* v. *Murdock*, 9 Miss.; *State* v. *Gilbert*, 24 Miss. [3 Jones], 365; Whart. Am. Cr. Law, book 1, p. 175, § 399; 1 Hale, 450, 466; *R.* v. *Clark*, Salk., 377; 4 Black., 307; 1 East P. C., c. 5, §§ 116, 117, pp. 345, 346; 2 Hale, 186; *Dias* v. *State*, 7 Blackf. Rep., 20; 1 Waterman's Archbold, 1, 86, 87; 2 Hawk., c. 25, § 110; 2 id., c. 25, §§ 110, 112; 2 id., c. 25, § 61; 2 East P. C., 21, § 11, p. 1033; 2 id., c. 21, § 5, p. 1033; 1 Russell on Crimes; *People* v. *Enoch*, 13 Wend., 159, 164; *White's Case*, 24 Wend., 558, 559, 581; *Sullivan* v. *People*, 1 Parker, 347, 354, 355; Austin [7 N. Y. Legal Observer], 117; Cooley's Blackstone, book 4, p. 198; 1 Russell on Crimes, § 4, 538–543; Whart. Cr. Law, § 399; Wharton on Homicide, 260; *Dorsey* v. *People*, 2 Parker Cr. R., 606; 11 N. Y., 120.) The court erred in admitting the so-called confession of the plaintiff in error. (1 Greenl. on Ev. [13th ed.], § 219, p. 256; Phil. on Ev., 401; 2 East P. C., 659; *People* v. *Bates*, 11 Cox Crim. Cas., 686; *People* v. *McMahon*, 15 N. Y., 385; *People* v. *Phillips*, 42 id., 200; Roscoe's Crim. Ex., 39; *Jeffards* v. *People*, 5 Park. C. R., 547;

1 Starkie Ev. [ed. 1824], 48.) A common-law count will not sustain a conviction for murder in the first degree. (2 Hale, 183, 184; Bacon's Ab. Indictment, G. 1; 5 East, 258; 4 Tenn. Rep., 258; *Lambert* v. *People*, 9 Cowen, 578; Waterman's Archibold [6th ed.], 85; 2 Chitty's Crim. Law, 171, 173, 281, 289; *People* v. *Wilber*, 4 Park., 19; *People* v. *Allen*, 5 Denio, 76; *Wood* v. *People*, 9 Barb., 678; *Briggs* v. *People*, 8 id., 547; *Wood* v. *People*, 53 N. Y., 511.) The court erred in refusing to charge that the possibility of death by natural causes must be excluded by the circumstances of murder in the first degree. (3 Greenl. on Ev., § 134; Wills on Cir. Ev., 168; 2 Starkie on Ev., 519–521 [6th Am. ed.].) If it was shown that the deceased died from fright, superinduced by the acts of violence of the accused, he could not be convicted under the indictment. (1 Hale's Pleas of the Crown, 429; 1 Russell on Crimes, 487, 488; Wharton on Homicide, § 368; 2 Hale's Pleas of the Crown, 185, 186; 2 East Pleas of the Crown, c. 5, § 107, p. 341; 2 Hawkins' Pleas of the Crown, c. 23, § 34; 1 Russell on Crimes, 556, 557.)

*Benj. K. Phelps*, for defendant in error. The court committed no error in sustaining the demurrer to the special plea or challenge. (3 R. S. [Bank's 6th ed.], 1025, § 75; *Friery* v. *People*, 2 Abb. Ct. of App. Dec., 229; *Ferris* v. *People*, 35 N. Y., 125; *Dolan* v. *People*, 64 id., 492.) The most culpable irregularities in the procuring of grand and petit jurors offer no ground for reversing a conviction, unless it appears that the defendant was in fact injured and prejudiced thereby. (*Ferris* v. *People*, 35 N. Y., 125; *Friery* v. *People*, 2 Abb. Ct. of App. Dec., 229, 230; *Dolan* v. *People*, 64 N. Y., 485. See, also, *Reg.* v. *Conrahy*, 1 C. & D. C. C., 56; *Reg.* v. *Fitzpatrick*, 1 C. & D., 513; *Commo.* v. *Leppard*, 6 Serg. & R. [Penn.], 395; *People* v. *Gonzalez*, 35 N. Y., 49; *People* v. *McCann*, 16 id., 61; *Shorter* v. *People*, 2 id., 202; *People* v. *Bransby*, 32 id., 525.) By his refusal to accept the offer of the court to commence the trial *de novo*,

and his failure to protest against such action, the prisoner was estopped from claiming any advantage from the original error in sustaining the demurrer, if there was one. (*People* v. *Stalcifer*, 6 Cal., 405; *Barlow* v. *State*, 2 Black. [Ind.], 114; *Rice* v. *State*, 16 Ind., 298; *State* v. *Groome*, 10 Iowa, 308; *Lisle* v. *State*, 6 Mo., 426; *Commo.* v. *Norfolk*, 5 Mass., 435; *State* v. *Hoscall*, 6 N. H., 360; *People* v. *Van Blarcum*, 16 Ill., 364; *Brown* v. *State*, 52 Ala., 345. See *Legget* v. *Bank of Pennsylvania*, 7 Serg. & R., 219.) The challenges to the jurors, Dumahout and Howard, were properly overruled. (*Thomas* v. *People*, 67 N. Y., 218, 220, 222; *People* v. *Honeyman*, 3 Denio, 121; *Lohman* v. *People*, 1 N. Y., 379; *Phelps* v. *People*, 72 id., 334; *Stokes* v. *People*, 53 id., 173; *Greenfield* v. *People*, 74 id., 277; *Costigan* v. *Cuyler*, 21 id., 134; *Sanchey* v. *People*, 22 id., 147; *O'Brien* v. *People*, 36 id., 276; *Staup* v. *Commo.*, 74 Penn., 458; *O'Mara* v. *Commo.*, 75 Penn. St., 427; *Ortwein* v. *Commo.*, 76 id.; 426; *Curley* v. *Commo.*, 84 id., 156; *Rex* v. *Edmonds et al.*, 4 Barn., Ald., 492; *Blake* v. *Millspaugh*, 1 J. R., 316; *Durell* v. *Mosher*, 8 id., 445; *Mary Riley's Cases*, 1 City Hall Rec., 24; *Milligan and Welchman's Case*, 6 id., 69; *People* v. *Fuller*, 2 Park. Cr. Rep., 16; *People* v. *Johnson*, 2 Whell., Cr. Cas., 369; *Ex parte Vermilyea et al.*, 6 Cow., 554; *People* v. *Mather*, 4 Wend., 229; *Rogers* v. *Rogers*, 14 id., 132; *People* v. *Bodine*, 1 Denio, 281; *Freeman* v. *People*, 4 id., 9, 34; *People* v. *Knickerbocker*, 1 Park., 302; *Cancemi* v. *People*, 16 N. Y., 503; *Stout* v *People*, 4 Park., 109, 132; *Sanchey* v. *People*, 4 id., 535; *Lowenberg* v. *People*, 27 N. Y., 342; 48 Barb.; 275; 36 N. Y., 279; *People* v. *Thompson*, 41 id., 5; *People* v. *Mallon*, 3 Lans., 233; *People* v. *Allen*, 43 N. Y., 33; *Manke* v. *People*, 17 Hun, 414; *Pender* v. *People* 18 id., 560; *Jackson* v. *Comm.*, 23 Grat. [Va.], 927; *Plummer* v. *People*, 74 Ill., 363; *State* v. *Johnston*, 1 Walk. [Miss.], 396, 399; *State* v. *Dorne*, 10 Ired., 469; *People* v. *Brotherton*, 47 Cal., 396; *State* v. *Benton*, 2 Dev. & Bat., 196; *State* v. *Lawrence*, 38 Iowa, 54; *Alfred et al.* v. *State*, 2 Swan [Tenn.], 581; *State* v. *Ellington,*

7 Ired., 61; *State* v. *Ostrander*, 18 Iowa, 451; *Leach* v. *People*, 53 Ill., 317; *Cooper* v. *State*, 16 Ohio St., 328; *State* v. *Kingsbury*, 58 Me., 245; *Rice* v. *State*, 7 Ind., 336; *Gold Mining Co.* v. *Bank*, 96 U. S. Sup. Ct., 462; *Clowe's Case*, 8 Grat., 606; *Lee* v. *State*, 45 Miss., 119; *Moran* v. *Com.*, 9 Leigh., 651; *Curry* v. *State*, 5 Neb., 413; *State* v. *Williams*, 3 Stew. [Ala.], 454; *State* v. *Caulfield*, 23 La. Ann., 148; *State* v. *Wilson*, 38 Conn., 137; *Smith* v. *Comm.*, 7 Grat., 596; *State* v. *Morea*, 2 Ala., 275; *State* v. *Ward*, 1 La. Ann., 686; *Fahnestock* v. *State*, 23 Ind., 236; *Noe* v. *State*, 4 How. [Miss.], 331; *Baldwin* v. *State*, 12 Mo., 225; *State* v. *Romain*, 11 Nev., 107; *McGregg* v. *State*, 4 Blachf., 105; *State* v. *Pike*, 49 N. H., 407; *Gardner* v. *People*, 4 Ill., 88; *Smith* v. *Eames*, 4 id., 77; *Baxter* v. *People*, 8 id., 376; *Hart* v. *State*, 57 Ind., 102; *Commo.* v. *Webster*, 5 Cush., 297; *State* v. *Bone*, 7 Jones [N. C.], 421.) There was no error in admitting the prisoner's confessions. (Joy on Confes., § 13; Taylor on Ev., 1, § 803; *Rex* v. *Green*, 6 Car. & Payne, 655; *Rex* v. *Lloyd*, 6 id., 393; *State* v. *Wentworth*, 37 N. H., 218; *Reg.* v. *Boswell et al*, 1 Car. & Mars., 584; *State* v. *Tatro*, 50 Vt., 483; *Com.* v. *Knapp*, 9 Pick., 496; *People* v. *McMahon*, 15 N. Y., 384; *People* v. *Wentz*, 37 id., 309; *Meyer* v. *State*, 19 Ark., 160.) The court correctly charged that if the deceased died from fright caused by the violence of the prisoner, he could properly be convicted under the indictment of murder in the first degree. (1 Hale Pl. Cr., 428; 2 Bish. Crim. Law, § 639 [6th ed.]; 7 Gray, 585; 2 Allen, 136; *Com.* v. *Green*, 1 Ashm. [Penn.], 289; *Rex* v. *Martin*, 5 Car. & Payne, 128; *Rex* v. *Webb*, 1 Mood. & Rob., 405; *Reg.* v. *Holland*, 2 id., 351; *State* v. *Morea*, 2 Ala. [N. S.], 275; *Reg.* v. *Haines*, 2 Car. & Ker., 368; *Reg.* v. *Longbottom*, 3 Cox C. C., 439; *Comm.* v. *McPike*, 3 Cush., 187; *McAllister* v. *State*, 17 Ala., 434; *Reg.* v. *Murton*, 3 Fost. & Fin., 492; *State* v. *Murphy*, 33 Iowa, 270; *Kee* v. *State*, 28 Ark., 155; *People* v. *Ah Fiat*, 48 Cal., 61; *Kelly* v. *State*, 53 Ind., 311; *Knickerbocker* v. *The People*, 43 N. Y., 177; *Bloomer* v. *The People*, 1 Abb. [Ct. of App., Dec.],

146; chap. 333, Laws of 1876, p. 318; 2 R. S. [1st ed.], 627;
Laws 1860, p. 712, chap. 410; Laws 1862, p. 368, chap. 197;
*Buel* v. *People*, 18 Hun, 487; *Com.* v. *Webster*, 5 Cush.,
.323; *State* v. *Williams*, 7 Jones [N. C.], 446; *People* v.
.*Cromn*, 34 Cal., 200; *State* v. *Verrill*, 54 Me., 408; *State*
v. *Parker*, 65 N. C., 453; *State* v. *Burke*, 54 N. H., 92;
*Kennedy* v. *People*, 39 N. Y., 245; *People* v. *Thompson*, 41
id., 1; *Keefe* v. *People*, 40 id., 348; *White* v. *Commo.*, 6
Bing. [Penn.], 179; *Fuller* v. *State*, 1 Blachf. [Ind.], 63;
*Wicks* v. *Commo.*, 2 Brock. [Va.], 387; *Mitchell* v. *State*,
.5 Yerg. [Tenn.], 340; S. C., 8 id., 514; *Com.* v. *Flana-
gan*, 7 Watts & Ser. [Penn.], 415; *Hines* v. *State*, 8 Hump.
[Tenn.], 597; *Gehrhe* v. *State*, 13 Texas, 568; *Wall* v.
.*State*, 18 id., 682; *Livingston* v. *Commo.*, 14 Grat. [Va.],
592; *Commo.* v. *Gardner*, 11 Gray [Mass.], 438; *People* v.
*Dolan*, 9 Cal., 576; *Commo.* v. *Desmarteau*, 16 Gray [Mass.],
11; *Green* v. *Commo.*, 12 Allen [id.], 170; *Witt* v. *State*, 6
Cold. [Tenn.], 5; *McAdams* v. *State*, 25 Ark., 405; *State*
v. *Pike*, 49 N. H., 399; *State* v. *Thompson*, 12 Nev.,
140.)

ANDREWS, J. This is a writ of error, brought to review
the conviction of the plaintiff in error, in the Court of Gen-
eral Sessions of the city and county of New York, of the
crime of murder in the first degree, in killing one Jane De
Forrest Hull, on the 11th day of June, 1879.

The general facts are that the prisoner, during the night-
time, burglariously entered the house of the deceased, and
while engaged in stealing jewelry and other property in her
bedroom awakened the deceased, and thereupon the prisoner
went to the bed where the deceased was lying, and a struggle
ensued between them. The next morning the deceased was
found lying upon the bed dead. Her limbs and arms were
tied; there were bandages about her eyes and over the
mouth, and a dress was wound around her neck. Her face
and hands were discolored, and there was an appearance as of
foam having issued from her mouth. The trunk of the

deceased which was in the room where she slept had been opened and many of the articles which she was accustomed to keep in it lay scattered about the floor. A watch and chain and several articles of jewelry belonging to the deceased were missing. The prisoner was arrested in Boston a few days after the homicide, and the watch and some of the articles of jewelry were found upon his person, and with trifling exceptions all the missing jewelry was traced to his possession. Various questions were raised and exceptions taken by the prisoner's counsel on the trial, and we shall proceed to state the conclusions we have reached upon the points to which the prisoner's counsel has called our attention.

*First.* The prisoner's counsel, at the commencement of the trial interposed a challenge in writing signed by the prisoner but not verified, to the array of jurors, which recited the various steps and proceedings prescribed by statute to be taken by the commissioner of jurors and other officers in the city of New York, in the preparation of jury lists and the selection and drawing of jurors for the courts in that city and it then proceeded to negative *seriatim* the performance by the officers of the various acts and duties imposed upon them by the jury law. The district-attorney demurred orally to the challenge, on the grounds among others, of informality of the statement of the matters alleged in the challenge, and the omission of the prisoner to verify the same. The court sustained the demurrer and overruled the challenge, and the prisoner excepted. The jurors were then called, and all who answered to their names were either excused or peremptorily challenged except three who took their seats in the jury box, but were not at this time sworn as jurors. The original panel having been exhausted, a second panel was drawn, and all the jurors who appeared except four were in like manner excused or peremptorily challenged and the four not excused or challenged likewise took their seats in the jury box unsworn. At this stage of the proceedings the court adjourned for the day. On the fol-

lowing morning at the opening of the court, the judge announced to the prisoner's counsel that, on more mature consideration he had concluded to allow the counsel to renew the challenge and to accept it without a verification, and, upon its traverse by the district-attorney the court would proceed to try the issues raised thereby and further stated that if necessary the case could be commenced over again, and that the court would let the seven jurors in the box who had not been sworn stand aside. The district-attorney thereupon offered to traverse the facts alleged in the challenge if renewed, and to consent that the seven jurors might stand aside. The prisoner's counsel insisted that it was too late to remedy the error if any had been committed, and in answer to a question whether he objected to accepting the offer of the court, and insisted upon going on with the trial, replied that he did. The challenge not being renewed, the drawing of the jury was completed, and two of the jurors who sat in the case were selected from the panel to which the challenge was interposed, and the remainder from an extra panel to which the prisoner made no objection.

The challenge was not a plea to the indictment, and was not within the statute (2 R. S., 731, § 1), which declares that no plea in abatement or other dilatory plea to an indictment shall be received by any court unless the party offering such plea shall prove the truth thereof by affidavit or other evidence. We are not aware of any rule of law which requires the verification of a challenge to the array before it shall be received and if any such rule exists, a demurrer which admits the facts alleged, would not seem to be a proper way to raise the objection, of want of verification.

It is strenuously insisted by the counsel for the People that the demurrer was well taken for the reason that the challenge while it negatives the doing of the various acts and things required by the jury law to be done by the various officials at the precise time, or in the exact mode pointed out by the

statute, nevertheless does not exclude the inference that they were in fact done, although not in strict conformity with the statutory directions.    It is well settled that mere irregularities in the drawing of grand and petit jurors, is not a ground for reversing a conviction, unless it appears that they operated to the injury or prejudice of the prisoner. (*Friery* v. *The People*, 2 Keyes, 425; *Ferris* v. *The People*, 35 N. Y., 125; *Dolan* v. *The People*, 64 id., 485.)    We deem it unnecessary to examine critically the averments in the challenge to the array to determine whether they are obnoxious to the objection suggested, or were consistent with the fact of a substantial compliance with the directions of the statute, or whether the averments disclose such a departure therefrom in fundamental and essential particulars, as to deprive the array of the character of a legal panel.    We deem the decision of this question unnecessary for the reason that we are of opinion that assuming the facts alleged constitute in law a good ground of challenge to the array, and that the demurrer was erroneously sustained, yet the prisoner by declining to avail himself of the offer of the court to re-open the question, and by insisting that the trial should proceed, precluded himself from insisting upon the exception to the ruling of the court sustaining the demurrer, and must be regarded as having abandoned the challenge.    The prisoner, if he had accepted the offer would have been placed in the same position as he was at the time the challenge was interposed.    It is not analogous to the case where illegal evidence has been admitted on the trial, and the error is sought to be remedied by the court withdrawing it from the consideration of the jury.    The illegal evidence having been received its injurious influence upon the jury may not be removed although it is formally withdrawn from their consideration. But neither a party in a criminal or civil case has a vested right on appeal to the benefit of an exception to an erroneous ruling, when the court on the trial corrects or offers to correct the error, and the party against whom it is made refuses to consent to the correction or to avail himself of

the offer, provided the appellate tribunal can see that the acceptance of the offer would have relieved the party from any actual or possible injury in consequence of the erroneous ruling. The maxim *volenti non fit injuria*, has in such a case a just and appropriate application. In this case the prisoner was not prejudiced by the erroneous ruling so that he could not be restored by the correction of the error to his original position. The suggestion that the witnesses to establish the facts alleged in the challenge may have been dismissed after the court had sustained the demurrer is not supported by any facts stated in the record, and it is evident that the allegations in the challenge if true were of such a character that they could readily be proved by the public records and by the commissioner of jurors and other officials of the city and county. Nor do we deem it a circumstance of any importance that the court did not on the second day formally set aside the prior proceedings. The offer to do so, was, so far as the prisoner was concerned equivalent to a reversal of the previous ruling.

*Second.* Two jurors, Adolph Dumahout, and Albert W. Howard, were challenged for cause and for favor and were examined on the challenges and the challenges were overruled. It is conceded that if the challenges to the juror Howard were properly overruled, the challenges to the juror Dumahout were properly overruled also. It will only be necessary therefore to consider the propriety of the ruling in the case of Howard. He testified on his *voir dire* examination by the prisoner's counsel, that he had read of the case, and had formed a decided opinion as to the guilt of the accused which it would require evidence to remove, and that if sworn as a juror he would enter the jury box with this opinion. On his examination by the district-attorney he testified in substance that his opinion was formed from having read in the newspapers accounts of the transaction, and among other things a statement purporting to be a confession by the prisoner of the crime, and that he accepted these accounts as true, for the reason that he had read noth-

ing to the contrary and that he believed statements in the newspapers which were not unreasonable until they were contradicted, and that in that sense he had an opinion of the guilt of the prisoner ; that he had no knowledge whether the statements he read were true or not, and that his opinion was a contingent one, based upon the supposed truth of the statements read ; that he had no pride of opinion and had no doubt of his ability to set aside the opinion he had on entering the jury box and decide the case according to the evidence submitted, without being influenced thereby or by what he had read. We are of the opinion that the challenge was properly overruled. Under the statutes of 1872 and 1873, the fact that a proposed juror has formed an opinion of the guilt or innocence of a prisoner, is no longer in any case a legal disqualification, provided the juror makes the declaration specified in the statute of 1872. If he makes such declaration, then his competency becomes a question of fact to be determined by the trial judge, subject, however to review by the appellate tribunal. We have had occasion in the case of *The People* v. *Balbo*,* decided at the present term, to consider the statutes referred to, and the function of an appellate tribunal in reviewing the decision of the trial court on challenges to jurors, and it is unnecessary to repeat what has been said in the opinion in that case. It is sufficient to say that we concur with the trial judge in the conclusion that the juror Howard did not have such an opinion as would prevent him from acting fairly and impartially as a juror in the case.

*Third.* The indictment contained several counts, some of which were common-law counts charging a felonious killing with malice aforethought, and containing the other averments necessary in a common-law indictment for murder. It is claimed that there could be no conviction under these counts, in a case within the third subdivision, of the definition of murder in the first degree, in the act chapter 333, of the Laws of 1876, which makes a killing murder "when perpetrated by a person engaged in the commission of a felony."

*\*Ante,* p. 484.

It has been settled by a series of adjudications commencing with the case of *People* v. *Enoch* (13 Wend., 159), that a specification in the statute of the cases which shall be deemed murder in the first degree, and the introduction of new definitions, or divisions, does not necessarily require a change in the form of indictment and that a conviction under a common-law indictment of murder in the first degree may be had in any case where the offence proved is brought within either of the statutory definitions. (*People* v. *White*, 22 Wend., 176; S. C., 24 id., 520; *People* v. *Fitzgerold*, 37 N. Y., 413; *People* v. *Kennedy*, 39 id., 245.) The statute has not made it necessary to change the form of criminal pleading in indictments for murder, and it has been held that a common-law indictment was sufficient to sustain a conviction of murder in the second degree under the act of 1862. (*People* v. *Keefe*, 40 N. Y., 348; *People* v. *Thompson*, 41 id., 1.)

*Fourth.* Several counts in the indictment were framed by charging the commission by the accused of the crime of grand larceny in the usual form, and then averring that the accused while engaged in the commission of the felony, feloniously assaulted the deceased, etc., but they contain no averment that the killing was with malice aforethought, or from premeditated design, or with intent to kill. The prisoner's counsel in various forms and at different stages of the trial raised the point that the counts were defective in not charging an intent to kill, and that in the absence of such intent a conviction under these counts could not be had. But the intent to kill is not a necessary ingredient in the crime of murder in the first degree under the third subdivision of the section of the statute of 1876 defining that crime. By that statute the killing of a human being is made murder in the first degree " where perpetrated by a person engaged in the commission of a felony." The killing if done by the accused when engaged in the commission of a felony constitutes the offence of murder in the first degree although the killing was casual and unin-

tentional.    It was therefore unnecessary to aver in the indict-
ment  an  intent  to  kill.    The  cases  of  *People* v.  *Dolan*
(64 N. Y., 485), and *Buel* v. *People* (18 Hun, 487),were con-
victions for murder in the first degree  under indictments con-
taining counts similar to  the counts now in  question, and in
both cases the convictions were  affirmed by this court.    The
use of the words malice aforethought, was essential  in an
indictment for murder  at the common-law.    It is in general
sufficient in an indictment for an  offence created by statute
to  allege  the  offence  in  the  words  of  the  statute.    The
Revised Statutes, and the statute of 1876, are declaratory
only, but we are of opinion that an indictment is good in
form  as an indictment for murder  in the first degree which
describes the offence in the language of the statute, and that
the technical words *malice  aforethought*,  are  no  longer
necessary when the indictment is framed under either of the
specifications contained  therein.

*Fifth.*  The confessions of the prisoner  made at the station-
house in  Boston after  his  arrest to  the  police officer who
arrested him, were properly admitted in evidence.    The con-
fession was not induced by any promise or threat and so far
as appears was entirely voluntary.    (*People* v. *Wentz*, 37
N. Y., 309.)    It is not sufficient to exclude  a confession by
a prisoner that he was under arrest at the time, or that it
was made to the officer in whose custody he was, or in
answer to questions put by him, or that it was made under
hope or promise of a benefit of a collateral nature.    (1 Greenl.
Ev., § 229;  Joy on  Confessions, § 13;  *Rex* v. *Lloyd*, 6 Car.
& Payne, 393; *State* v. *Tatro*, 50 Vt., 483.)

*Sixth.*  The prisoner's counsel excepted to the charge that
"if  the deceased died from fright, and if the fright was
caused by the violence of the prisoner he is as responsible,
and can as properly be convicted under  this indictment of
murder in  the first degree as if the immediate result of his
act was suffocation."    It is claimed that this charge was
erroneous for the reason that it was not charged in the
indictment that the killing was by fright superinduced by

the acts of violence of the accused.   The indictment charges in some counts that the prisoner choked, smothered, stifled, and suffocated the deceased, and in others that he assaulted the deceased and killed her by means and instruments to the jurors unknown.   It was not necessary in order to convict the prisoner that it should appear that his actual personal violence was the sole and immediate cause of the death of the deceased.   If his violence so excited the terror of the deceased that she died from the fright, and she would not have died except for the assault, then the prisoner's act was in law the cause of her death.   We are of opinion that the prisoner was properly convicted under the counts charging an assault, and that the prisoner " in some way and manner, and by the use of some means and instruments, to the jury unknown," deprived the deceased of her life if the jury found that the deceased died from fright superinduced by the prisoner's violence. (*Com.* v. *Webster*, 5 Cush., 295; *Com.* v. *Fox*, 7 Gray, 585; 1 Hale's Pl. Cr., 428; 2 Bishop's Crim. Law, § 639.)

*Seventh.*   The prisoner's counsel requested the court to charge "that the possibility of death by natural causes (and by natural causes are meant heart disease, appoplexy or fright) must be excluded by the circumstances in order to convict of murder in the first degree."   The court refused to charge other than it had charged on that subject and the prisoner's counsel excepted.   The court had previously charged that if the jury believed that the deceased died from fright and not from any violence of the accused they might acquit.   The request was properly refused.   The possibility of death from any cause other than the act of the prisoner would not require the jury to acquit the prisoner if the evidence satisfied them beyond a reasonable doubt that the act of the prisoner caused the death of the deceased.   The request also left out of view the element of the violence of the prisoner which if it produced the fright and contributed to her death, justified a conviction.

No other grounds than those above considered have been

urged by the prisoner's counsel for the reversal of the conviction. We are of the opinion that none of them are tenable, and that no error was committed on the trial which authorizes a reversal of the judgment.

The judgment should therefore be affirmed.

All concur.

Judgment affirmed.