### PEOPLE v. HATTER.

#### (Court of Sessions, Ulster County. March 2, 1893.)

1. DISORDERLY HOUSES—CITY CHARTER AND ORDINANCE—REPEAL.
    Pen. Code, § 322, makes the keeping of a disorderly house, which prior thereto was a misdemeanor at common law, a statutory offense. Section 2 provides that, after the taking effect of the Code, (December 1, 1882,) no act shall be deemed criminal or punishable except as prescribed or authorized by it, or by some statute not repealed by it. *Held*, that the provisions of the charter of the city of Kingston (Laws 1872, c. 150) authorizing its common council to suppress disorderly houses, and an ordinance of such council prohibiting such houses, and providing for the punishment of keepers thereof, were repealed.
2. SAME—SUBSEQUENT AMENDMENT OF CHARTER.
    Pen. Code, § 728, provides that none of the provisions of such Code shall be deemed repealed, altered, or amended by the passage of any subsequent act, inconsistent therewith, unless such statute shall explicitly refer to, and directly repeal, alter, or amend, it. *Held*, that Laws 1888, c. 33, amending such city charter so as to provide that all persons offending against any ordinance passed by the city council should be deemed guilty

of a misdemeanor, and on conviction be punished by a fine not exceeding $200, or by imprisonment, and that the recorder of such city should have exclusive jurisdiction in such cases, though constitutional, was not a legislative recognition that the general law was modified by the local statute, since such amendment does not refer to, and directly repeal, alter, or amend, the Penal Code.

3. SAME—JURISDICTION.

Though such local statutes were in force, they would not affect the authority of the grand jury of the county in which such city is situated to indict, or the court of sessions to try, a person so indicted for keeping a disorderly house in such city in violation of a statute of the state.

4. SAME—SUFFICIENCY OF INDICTMENT.

An indictment for keeping a disorderly house charged that, on certain dates named, defendant "did keep and maintain a certain common, ill-governed, and disorderly house, and in his said house, for his own lucre and gain, certain persons, as well men as women, of evil name and fame and of dishonest conversation, to frequent and come together then and on said days and times, there, unlawfully and willfully, did cause and procure, and the said men and women, in his house, at unlawful times, as well in the night as in the day, then and on said days and times, there to be and remain, drinking, tippling, gambling, whoring, and misbehaving themselves, unlawfully and willfully, did permit and get, there, thereby, habitually disturbing the peace, comfort, and decency of the neighborhood of the said common, ill-governed, and disorderly house, to the great damage and common nuisance of the people," etc. *Held*, that such indictment is not subject to the objection that more than one crime is charged, within the meaning of Code Crim. Proc. §§ 278, 279, providing that the indictment must charge but one crime, in one form, except that it may be charged in separate counts to have been committed in a different manner or by different means, and, where the act complained of may constitute different crimes, they may be charged in separate counts.

Indictment of Jacob Hatter for keeping a disorderly house, to which defendant demurred. Demurrer overruled.

The indictment charges that defendant, on the 18th day of December, 1892, in a certain county in this state, and at divers other days and times between said date and the 1st day of June, 1892, "aforesaid, did keep and maintain a certain common, ill-governed, and disorderly house, and in his said house, for his own lucre and gain, certain persons, as well men as women, of evil name and fame and of dishonest conversation, to frequent and come together then and on said days and times, there, unlawfully and willfully, did cause and procure, and the said men and women, in his house, at unlawful times, as well in the night as in the day, then and on said days and times there to be and remain, drinking, tippling, gambling, whoring, and misbehaving themselves, unlawfully and willfully did permit and get, there, thereby, habitually disturbing the peace, comfort, and decency of the neighborhood of the said common, ill-governed, and disorderly house, to the great damage and common nuisance of the people of the state of New York then and there inhabiting, residing, and passing, to the evil example of others, and against the form of the statute," etc.

F. Arthur Westbrook, Dist. Atty., for the People.

David M. De Witt, for defendant.

CLEARWATER, J.    The defendant, who is a resident of the city of Kingston, was arrested upon a warrant issued by the recorder of that city, charging him with keeping a disorderly house. He waived an examination, and gave bail to await the action of the grand jury. At the next court of sessions, he was indicted for the keeping of a disorderly house, and now demurs to the indictment

v.22N.Y.s.no.5—44

upon the grounds—First, that the grand jury had no legal authority to inquire into the crime charged, by reason of its not being within the jurisdiction of the court; second, that more than one crime is charged, within the meaning of sections 278 and 279 of the Code of Criminal Procedure. He claims that the charge is within the provisions of subdivision 34 of section 56 of the Code of Criminal Procedure, which gives to courts of special sessions exclusive jurisdiction, in the first instance, to hear and determine charges of misdemeanor in 33 classes of cases, and such other jurisdiction as is provided by special statute, or municipal ordinance authorized by statute. He further claims that by the charter of the city of Kingston (chapter 150 of the Laws of 1872) the common council is clothed with power to suppress and restrain disorderly houses and houses of ill fame, (section 33, subd. 13;) that on the 29th of October, 1875, the common council passed an order prohibiting the maintaining of disorderly houses within the bounds of the city, and providing that every person guilty of a violation of the ordinance should incur a penalty of not less than $25 nor more than $100; that by chapter 33 of the Laws of 1888 the charter was amended so as to provide that all persons offending against any ordinance passed by the common council should be deemed guilty of a misdemeanor, and upon conviction be punished by a fine not exceeding $200, or by imprisonment, and the recorder of the city was given exclusive jurisdiction of, and power to hear and determine, charges for every such misdemeanor.

Waiving the discussion of the constitutionality of this amendment, it hardly seems to me controlling in the case at bar. Prior to the enactment of the Penal Code the keeping of a disorderly house was a misdemeanor at common law. The Penal Code made it a statutory offense. Pen. Code, § 322. By the provisions of the Code, no act after it took effect as a law (December 1, 1882) is deemed criminal or punishable except as prescribed or authorized by it, or by some statute not repealed by it. Id. § 2. The defendant's claim that the Penal Code, being a general act, did not repeal or modify the local law applicable to the city of Kingston, passed before its enactment, and that the amendment to the charter (chapter 33 of the Laws of 1888) was a legislative recognition, so far as the city is concerned, that the general law was modified by the special or local statute, is untenable; it being expressly provided by the Code itself that none of its provisions shall be deemed repealed, altered, or amended by the passage of any subsequent act, inconsistent therewith, unless such statute shall explicitly refer to, and directly repeal, alter, or amend, that Code. Pen. Code, § 728.[1] This the amendment to the charter does not do. Moreover, the defendant is not indicted for a transgression of an ordinance of the city, but for a violation of a statute of the state. The grand jury, therefore, had authority to inquire into the crime charged, and to present the indictment. The court of sessions is clothed with jurisdiction; and the first count of the defendant's demurrer, not being well taken, should be overruled.

---

[1] Section 728 was added to the Penal Code by Laws 1886, c. 31, § 8.

As a second ground of demurrer, the defendant alleges that more than one crime is charged in the indictment.    The Code of Criminal Procedure provides that the indictment must charge but one crime, in one form, except that the crime may be charged in separate counts to have been committed in a different manner or by different means, and, where the crime complained of may constitute different crimes, such crimes may be charged in separate counts.    Code Crim. Proc. §§ 278, 279.    The indictment charges the defendant with keeping a "house of ill fame," and "a disorderly house," in the common-law form, "ad commune nocumentum," and it is claimed that this is a charge for keeping a disorderly house at common law, and not under the Penal Code.    While, to a large extent, the indictment follows the ancient precedents, it still sets forth the act charged as a crime with such a degree of certainty as to enable the defendant to know the act with which he is charged; and the crime alleged is stated with such a degree of certainty as to enable the court to pronounce judgment, upon conviction, according to the right of the case.    Code Crim. Proc. § 284.    By the statute of jeoffails, "no indictment is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of an imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."    Id. § 285. The constructive section of the Penal Code (Pen. Code, § 718, subd. 16) provides that the terms, "reputed house of prostitution or assignation," "house of prostitution," "house of ill fame or assignation," "disorderly house," include all premises which, by common fame or report, are used for the purpose of prostitution or assignation; and section 283 of the Code of Criminal Procedure provides that words used in a statute to define a crime need not be strictly pursued in an indictment, but other words, conveying the same meaning, may be used; and section 282 of that Code requires that words used in an indictment must be construed in their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning. That a statute defining a crime is not a rule of pleading, but a guide to the conduct of the trial, prescribing the proofs requisite to a conviction, and that an indictment containing a count in the common-law form, if sustained by evidence, justifies a conviction for even so great a crime as any of the degrees of felonious homicide known to the law, has been the well-settled rule of criminal pleading in this state for upwards of half a century, having been first held in 1834 by the court for the correction of errors in People v. Enoch, 13 Wend. 159-172; reaffirmed by the supreme court, in 1839, in the case of People v. White, 22 Wend. 167; again, by the court of appeals, in 1868, in Fitzgerrold v. People, 37 N. Y. 413, and Kennedy v. People, 39 N. Y. 245; again, in 1880, in the case of Cox v. People, 80 N. Y. 500; in 1884, in the case of People v. Conroy, 97 N. Y. 62; and again, in 1886, in People v. Willett, 102 N. Y. 251, 6 N. E. Rep. 301.    Not only is this the established rule in this state, but it is a rule that has prevailed from the earliest time, and still prevails, in many other states, as will be seen from an examination

of the cases, in many of which the leading case of People v. Enoch is commented upon and followed. The averments of this indictment being sufficient to inform the defendant of the nature of the accusation against him; to enable him to prepare his defense; to leave the court in no doubt as to the act for which it should inflict punishment, in event of conviction; to admit of the record as a bar to a second prosecution for the same offense, and none of the allegations being inconsistent or incongruous,—we think its purpose is sufficiently accomplished. It was the purpose of the Code of Criminal Procedure to abolish involved efforts at precision, leading to objections of the most trivial and technical character; and while, as has been justly said, the reformation wins its way but slowly, it is the duty of all courts to encourage it, when sufficiently attempted.

We think that this indictment is neither multifarious, nor bad for duplicity; that the court has jurisdicton of the crime charged; and that the demurrer is not well taken, and should be overruled, with leave to the defendant to plead over.