THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN PETREA, APPELLANT.*

*Grand and petit jurors — what objections to the validity of the laws under which they were selected cannot be raised by the prisoner upon his trial.*

The appellant upon being arraigned upon an indictment charging him with grand larceny filed a written plea or objection setting forth in effect that the list of

---

* *The People* v. *Petrea* was decided in November, 1882.

In *The People v. John Duff*, it appeared that on May 7, 1883, and *prior* to the organization of the grand jury for the Oyer and Terminer of Albany county

jurors from whom the names of the grand jury by whom he was indicted were selected was not prepared by the supervisors of the county of Albany as required by law, but was prepared by the recorder of the city of Albany in pursuance of the authority conferred upon him by chapter 532 of 1881, which amended section 1041 of the Code of Civil Procedure; that the said act was a violation of section 18 of article 3 of the Constitution prohibiting the passage of a private or local bill for the selecting and drawing of grand or petit jurors, for the reason that the said act was not reported to the legislature by commissioners appointed pursuant to statute to revise the law; that it was for that reason void, and the persons selected and summoned under it did not constitute a grand jury within the meaning of section 6 of article 1 of the Constitution. The district attorney having replied and the prisoner rejoined, the court refused to receive evidence offered by the prisoner to prove the facts set up in the plea.

*Held,* no error. (WESTBROOK, J., dissenting.)

Motions made by the prisoner to set aside and to quash the indictment upon the same grounds were denied.

*Held,* no error. (WESTBROOK, J., dissenting.)

The prisoner having pleaded guilty the trial was moved, whereupon he objected to the panel of petit jurors upon the ground that the act (chap. 532 of 1881), which provided that the recorder of the city of Albany should discharge the duties theretofore imposed upon the supervisor and assessor of each of the wards thereof, was unconstitutional and void for the reasons before stated.

*Held,* that the court properly overruled the objection. (WESTBROOK, J., dissenting.)

APPEAL from a judgment of conviction for grand larceny, rendered in the Court of Sessions of Albany county.

At the September term of the Court of Sessions, held in September, 1881, a grand jury, organized as hereinafter stated, found an indictment against the defendant for grand larceny, alleged to have been committed in the city of Cohoes on the 2d day of August, 1881. At the March (1882) term of said Court of Sessions, the

---

the defendant Duff, who had given bail to answer any indictment which might be found, objected, by counsel, to the individuals composing such grand jury for the reason that each and every one had been obtained under the provisions of chapter 532 of 1881, and not drawn in the manner prescribed by the Revised Statutes, and moved that the grand jury be discharged. The decision of this motion was postponed.

An indictment having been found by the grand jury against the defendant, the motion was renewed before Judge WESTBROOK, who, in an elaborate opinion, decided that the indictment should be quashed.

The Reporter is advised by Hon. D. Cady Herrick, District Attorney of Albany county, that an appeal will be taken from Judge WESTBROOK's decision, for the purpose of reviewing it in the appellate courts.

defendant was brought into court and a plea in abatement was filed.

The substance of the plea was, that the grand jury which found the indictment was drawn from the names of persons selected by the recorder of the city of Albany, instead of from names of persons selected by the supervisors of the county, and that chapter 532 of the Laws of 1881, amending section 1041 of the Code of Civil Procedure, which assumed to authorize the recorder to select such names, was in violation of the provisions of the Constitution forbidding local laws for selecting, drawing, summoning or impanneling grand or petit jurors (Art. 3, § 18), and that the Code commissioners had not reported the said chapter 532. A replication and a rejoinder were filed. It was admitted that the grand jury which found said indictment was selected and drawn pursuant to said chapter 532 of the Laws of 1881.

The defendant's counsel asked the court to hold, as matter of law, that the Constitution having prohibited the legislature from passing a local bill for the purpose of selecting or drawing grand jurors with certain exceptions, the *onus* was upon the people to show that said chapter 532 came within the exception, which was refused and an exception taken.

The defendant then offered to prove by the clerk of the senate, by the commissioners appointed to revise the statutes, by the journal of the legislature of 1881, and by the original act itself, that the law in question was not reported to the legislature by any commissioner or commissioners who are or had been appointed pursuant to law to revise the statutes, which offer was objected to, and the objection sustained, and the defendant excepted.

The defendant offered to prove that said chapter 532 was introduced in the legislature by a member thereof who was not and never had been a commissioner to revise the statutes, or any statute. The offer was objected to and the objection sustained. The plea was thereupon, on motion of the people, overruled and an exception taken.

The same questions were raised on motions to set aside and to quash the indictment. The motions were denied and exceptions taken.

The defendant pleaded not guilty. Upon the trial of the indictment the same questions were raised as to the panel of petit jurors, and to each juror, which were overruled and exceptions taken.

The trial proceeded and the defendant was convicted. A motion for a new trial on all the grounds above stated was made and denied.

*N. P. Hinman* and *E. J. Meegan*, for the appellant.

*D. Cady Herrick*, district attorney, for the people.

LEARNED, P. J. :

The prisoner was indicted September 19, 1881. When arraigned he filed a plea setting forth certain alleged defects in the forming of the grand jury which indicted him. The district attorney filed a replication and the prisoner a rejoinder. The prisoner offered to prove certain facts set up in his plea. The court excluded the evidence, and on the motion of the district attorney, overruled the rest of the plea. Thereupon the defendant demanded a trial and pleaded not guilty.

No such plea as that offered by the defendant is now allowed. (Code Crim. Pro., § 273, 332.) And a plea must be oral. (Sec. 333.) It was proper, therefore, to require the prisoner to plead one of the three pleas authorized by section 332.

The prisoner, upon pleading not guilty, moved to set aside the indictment on the ground that the grand jury was unlawfully selected and drawn, and for the reasons stated in his plea, and offered to prove certain facts by legislative journals and by oral testimony. The offer was overruled. He also moved to quash the indictment on the said grounds. This was overruled.

The Code of Criminal Procedure seems to have substituted a motion to set aside an indictment, for the former motion to quash. (Sec. 313.) It must be set aside when it is not found indorsed and presented as prescribed in sections 268 and 272. The only ground which the prisoner makes is that none of the persons who, as grand jurors, found the indictment were grand jurors.

A motion to quash an indictment, and so a motion to set it aside, should be made upon affidavits. No affidavit appears in this case. We know of no practice by which the prisoner, on such a motion, offers to prove certain facts and endeavors to take exceptions to the exclusion of such offer. The proceeding is not a trial, but a mere motion, which must be based on affidavits. There are none here.

Again, so far as we can discover, the Code of Criminal Procedure

has not provided for any review of the order granted on such a motion. Section 517 says that on appeal any intermediate order, forming a part of the judgment-roll, as prescribed in section 485, may be reviewed. On turning to section 485 it will be found that the judgment-roll is not required to contain the proceedings on a motion to set aside the indictment. So that we find no authority for the review of an order setting aside or refusing to set aside an indictment. If it be suggested that the proceedings on that motion should appear in the bill of exceptions, and hence in the judgment-roll, the contrary is shown by section 455.

Furthermore we find no order whatever refusing to set aside the indictment. The legislature may well have thought that as an indictment is only an accusation it was sufficient to give the trial court power to set it aside, and was unnecessary to permit appeals from the action of that court.

It is, however, urged by the prisoner that the Constitution provides that a person shall not be held to answer for such a crime except on indictment of a grand jury (art. 1, § 6); that the body which indicted him was not a legal grand jury, and that therefore he cannot be constitutionally deprived of his right to assert that he was not so indicted. That may be so. The prisoner did assert that he was not legally indicted, by his motion to set aside the indictment, and that was decided against him. We do not understand that there is any constitutional provision which allows a party always to appeal to the highest court, even when his grievance is that a constitutional right has been infringed. When and on what grounds appeals shall be allowed are questions for the legislature. So that unless a right of appeal has been given from an order refusing to set aside an indictment we cannot hear that question. This paper was not a challenge to the array of grand jurors, for none is allowed. (Code Crim. Pro., 238.) And after indictment found there could plainly be no challenge to the grand jury individually. (Sec. 239.) So far as the indictment is concerned the prisoner's remedies are those given in section 313. But if we could review the refusal to set aside the indictment we should find no error. Proceedings are not affected by imperfection in matters of form. (Code Crim. Pro., § 285.) A grand jury is defined in section 223. The prisoner's allegation is that the persons who found the indictment were

drawn by the officers, under claim of law, from the petit jury box instead of the grand jury box. But if this be a ground of objection it must be so under section 238, subdivision 1, Code Criminal Procedure; and that section leaves it to the discretion of the court to discharge the panel. The court in which the indictment was found had jurisdiction. Persons were returned to that court as grand jurors and were sworn and acted as such, and thus they formed a legal grand jury. (*Dolan* v. *People*, 13 Sup. Ct. N. Y. [6 Hun], 494.)

The prisoner having pleaded not guilty a jury was ordered to be impanneled. Thereupon it appears the prisoner's counsel objected to the panel of jurors, and to each juror, upon the ground that chapter 532 of the Laws of 1881 was unconstitutional, being a local act, etc., "and offered to substantiate the same by proof, which was objected to, sustained and an exception taken."

An objection to a panel of jurors, and to each juror, must have been intended as a challenge, that being the only mode known to the law of making such objection. (Code Crim. Pro., § 359.)

Now, the first difficulty in regard to this challenge to the panel is that such a challenge must be in writing. (Sec. 363.) No written challenge appears. The so-called plea referred only to the grand jurors. The next difficulty is that no facts are stated sufficient to constitute a challenge. It is not alleged that the petit jurors were drawn under chapter 532 of the Laws of 1881. Again, none of the proceedings required by sections 365 and 366 were taken, so that here was no exception to the challenge (sec. 364); a denial of the challenge (sec. 366); a trial of the challenge (sec. 382). We do not know whether the court held the challenge to be sufficient or the allegations to be untrue. Nor does it even appear what evidence was offered so that we can judge whether it was properly excluded or not.

If we overlook all these difficulties and suppose that the court held the challenge insufficient, was there any error? A challenge to the panel can be founded only on a material departure to the prejudice of the defendant, from the forms presented by the Code of Civil Procedure, in respect to the drawing and return of the jury. (Sec. 362.) The other ground contained in that section is not claimed. The forms prescribed for the drawing and return of the jury are found in the Code of Civil Procedure, sections 1043 to 1048. An

examination of those sections will show that there is nothing in them on which this challenge could be based. It is not alleged that the clerk did not conduct the drawing of jurors in the very manner prescribed by these sections. His duty is to draw the jury from the box containing the ballots. (Sec. 1042.) These ballots he is previously to prepare. (Sec. 1038.) The right to challenge the panel says nothing, in express words, as to a challenge for any material departure in respect to the preparing the ballots. And the legislature may have thought that, against the introduction of improper persons by the clerk in preparing the ballots, the prisoner was sufficiently protected by his right to challenge individual jurors for cause. (Code Crim. Pro., §§ 375 to 377.)

For if we overlook all the difficulties which we have seen stand in the prisoner's way on this appeal, and inquire what would have been his ground of complaint if he had properly presented it, we shall find it to be this : that the county clerk, in preparing ballots and putting them in the box under section 1038, Code Civil Procedure, put in names which had not been selected by the proper officers. It is not claimed that a list had not been made out and filed with the clerk, or that he did not make his ballots from such list. But it is claimed that such list was not made out by the officers authorized to make the same ; but was made by other officers claiming the legal right. Nor is it pretended that there was any list from which the clerk could prepare ballots, except that list from which he did prepare them. How, then, can it be claimed that in drawing this jury the clerk departed from the forms of section 1047, Code Civil Procedure ? The legislature may well have refused to give any right of challenge for any fault or error in the preparation of the jury list; provided only that the clerk properly drew the trial jury from the box of ballots prepared by him.

Assume then, for the present, that the list of names of all persons believed to be qualified to serve as trial jurors was made up by the wrong officers; what is that to the prisoner? If any juror drawn on the trial is objectionable, he can be challenged. This list is made up and the system of drawing jurors by the clerk is adopted " to secure a due and uniform distribution of jury duty, and to guard the great body of jurymen from the fraud or favoritism of the drawing and summoning officers." (*Friery* v. *People*, 2 Abb.

Ct. Ap., 230.) Challenges to the array existed formerly, for the reason that there might be prejudice on the part of the sheriff. Now, since such prejudice cannot affect the drawing, these challenges have been limited, as above stated (Code Crim. Pro., § 362), and there must be a departure "to the prejudice of the defendant." No prejudice to the prisoner is shown or suggested. These irregularities are of no consequence. (Cox v. People, 80 N. Y., 500.)

But further, if the question of the constitutionality of chapter 532, Laws of 1881, were before us we could not hold it to be unconstitutional. The restriction on the legislature, contained in section 18, article 3, of the Constitution, is qualified by section 25 of the same article. The restriction does not apply to any bill or the amendments to any bill which shall be reported to the legislature by commissioners who have been appointed pursuant to law to revise the statutes. If this law is to be held unconstitutional, then it must be upon a finding of the fact that it was not so reported. Whether or not there were any such commissioners in 1881 is not decisive. They may have reported the bill several years before, although it was not passed by the legislature until 1881. We do not say that such is the fact; only that it is possible. Then the constitutionality of the law must depend not on the construction of language, which is a matter of law, and, therefore, of conclusive judicial decision; but on a question of fact, which may be found by one tribunal in one way and by another tribunal in another. On the trial of this present case the court might, on the question of fact, have found that the commissioners did report the bill, and have held the law, therefore, constitutional. At the next court the same question may arise and the court may find that the commissioners did not report the bill, and, therefore, hold the law unconstitutional.

When the Constitution permitted the legislature to pass such a law, if reported to them by certain commissioners, it necessarily made the legislature the judges of the fact, whether the law has been so reported. Their decision must be conclusive. No other rule would be tolerable. The constitutionality of laws cannot be permitted to depend on the possibly varying decision of courts or juries on mere question of fact, especially on a fact as to which the legislature had special knowledge. (Matter of N. Y. Elev. R. R., 70 N. Y., 351; People v. Devlin, 33 id., 279.)

The judgment and conviction should be affirmed. The same in the other case against the same prisoner.

BOCKES, J. :

The defendant was indicted in the Albany County Sessions, September, 1881, for the crime of grand larceny, committed in August of that year. He was tried at the March term of that court, 1882; was found guilty, and was sentenced to imprisonment in the penitentiary for the period of five years.

When arraigned he interposed objections to the finding of the indictment in various forms; all, however, centering in this: that the grand jury which found the indictment was drawn from the names of persons selected by the recorder of the city of Albany instead of from a list of names of persons selected by the supervisors of the county, and from the petit jury list, which proceeding in that regard was taken under and pursuant to section 1041 of the Code of Civil Procedure, as amended by chapter 532 of the Session Laws of 1881; whereas, as was insisted, such section as amended was unconstitutional in so far as it provided for the selection of grand jurors in and for the county of Albany, by the recorder of that city; hence that the grand jury should have been selected and drawn under and pursuant to the provisions of the Revised Statutes which, as was claimed, remained in force.

The objection so urged against the indictment was overruled by the court and the defendant was put to his plea of not guilty.

The objection interposed was in the nature of a challenge to the array. It went to the entire panel, and was based on an alleged vice or irregularity in the selection of the grand jurors by whom the indictment was found. It can make no difference as regards the examination of the question before the court, that the objection was made by formal plea, like a plea in abatement to the jurisdiction of the court or for *misnomer*. This was but a mode of presenting the question for decision. The point to be determined by the court was whether, on the alleged facts, the indictment was regularly found — whether the defendant was bound by the law to make answer to it on the merits as to his guilt or innocence. The mode of presenting the question is quite immaterial. Whatever may be the form of its presentation, the question is whether the

objection based on the alleged facts was properly overruled. It is proposed, however, to examine the case in all its aspects, at least in so far as is needful to dispose of it as here presented.

The defendant's counsel insists that the question presented for decision must be considered under the provisions of the Revised Statutes; this on the hypothesis that the act of 1881 (chap. 532) is unconstitutional and void, and that as a consequence the provisions of the Revised Statutes bearing on the subject remain in force.

Now let this be conceded and let it be also admitted that the objection to the indictment is in effect a challenge to the array, and should be so considered, and the objection is met and answered by section 28 of the Revised Statutes (2 R. S., 724, mar. pag.), which declares that no challenge to the array of grand jurors shall be allowed in any other cases than such as are specified in the last preceding section (27), which section (27) does not include the ground here relied on. As was said by SELDEN, J., in *Dawson* v. *The People* (25 N. Y., 404–5), this statute "limits the grounds of challenge by persons charged with crime to the prosecutor or complainant making the charge and the witnesses to sustain it." This provision was doubtless intended to cover matters of regularity in obtaining the panel of grand jurors, recognizing the fact that the substantial rights of the accused could be and would be fully protected to him on the trial upon the indictment before the petit jury. If, therefore, it be assumed that the case is one of challenge to the array, and that the question raised is to be controlled by the provisions of the Revised Statutes, it follows that the objection urged is nullified by the sections above cited. (*Carpenter* v. *The People*, 64 N. Y., 483.) Besides, it has been repeatedly decided that irregularities in the selection or drawing of grand jurors not affecting the substantial rights of the accused, as regards the question of his guilt or innocence, is not good ground of challenge to the array. (*Friery* v. *The People*, 2 Keyes, 424: *Cox* v. *The People*, 80 N. Y., 500–511; *Dolan* v. *The People*, 64 id., 485; S. C. in Sup. Ct., 6 Hun, 232 and 493.) In Dolan's case the question was considered (as stated by Judge DANIELS) on what was relied upon as a plea in abatement. (See also statement of the case, 64 N. Y., 486–7.) In this case Judge EARL says: "Courts do not look with indulgence upon objections to irregularities in the mode of selecting or draw-

ing grand jurors committed without fraud or design, which have not resulted in placing upon any panel disqualified jurors." But the defendant's counsel insists that these authorities relate to mere irregularities and do not reach the case in hand, inasmuch as the ground of objection here is vital — such as (if admitted) deprives the array of the character of a legal panel. Now in Dolan's case the ground urged was the same as is here urged, to wit : that the pretended grand jury which found the indictment was not a grand jury in and for the city and county (64 N. Y., 496–7) ; that it was not "lawfully created and organized" (6 Hun, 495), yet the objection was held inadmissible. The objection in that case was as "vital," and as much deprived "the array of the character of a legal panel" as in the present. I shall have occasion hereafter to refer more particularly to the ground of objection in Dolan's case, but attention is here called to the remarks of Judge EARL in that case. The learned judge says : "The plea contains no allegation of any corruption, dishonesty or unfairness on the part of any of the officers in selecting and drawing the grand jurors, or of any design to injure the defendant or any other person ; and it contains no allegation that any of the persons who were upon the grand jury which indicted the defendant did not possess the qualifications of grand jurors, or that any person was upon the jury who would not have been there if all the forms of law which are claimed to have been disregarded had been complied with. It is not apparent how the alleged irregularities harmed the defendant ; and it is certain that they had no relation whatever to the question of his guilt or innocence of the crime charged. Under such circumstances the indictment should be upheld unless the facts pleaded point out some vital error." As above suggested the objection there under consideration was no less vital than it is in this. The remarks of Mr. Justice DANIELS in Dolan's case, when in this court, are in line with those of Judge EARL above quoted. (6 Hun, 494 ; see, also, *The People* v. *Dolan*, Id., 232 ; *Friery* v. *The People*, 2 Keyes, 424.) From these and other cases it would seem, therefore, that these alleged errors urged by the defendant as ground of objection to the indictment are untenable, inasmuch as it is not made apparent that he was or could be in any way injured or prejudiced by them.

But there is another answer to the objections urged which seems entirely conclusive against their allowance. The court in which the indictment was found had undoubted jurisdiction of the case. The list of names of persons to serve as grand jurors was made up from the right source, that is, from the body of the county; and the names of the persons drawn to serve as grand jurors were, as must be presumed, certified to the court in due form by the record. It is not pretended but that they were drawn by the proper officers, nor but that they were, one and all, duly qualified to serve and act as grand jurors in and for the county of Albany; nor but that they were honest, intelligent and impartial, were duly summoned and impanneled in due form, and in all respects performed the duties of grand jurors according to the forms of law. Considered as officers of the law to aid in the administration of justice in criminal cases they constituted a *de facto* body in the exercise of legal functions under color of lawful authority. So it was held in *The People* v. *Dolan* (6 Hun, 232) that it was sufficient to maintain the authority of the grand jury to investigate criminal charges and find indictments valid in their nature that the body acted under color of lawful authority; and according to the case of *Thompson* v. *The People* (6 Hun, 135) it would not alter this conclusion even if the selection of the grand jurors involved in the proceeding the acts of an officer holding his office under an unconstitutional law. It was there decided that such officer must be deemed an officer *de facto*, whose acts could not be brought in question in a collateral proceeding between other parties. True, this latter decision was made with reference to the panel of petit jurors, but the principle thus declared is equally applicable to a case where like objection is urged to the panel of a grand jury. But the decision in Thompson's case meets and answers the precise point urged here, to wit, that the recorder of the city of Albany assumed to act and did act in the selection of the jury list without authority under and pursuant to an unconstitutional law. It was there decided that a challenge to the array by the accused could not be sustained, even were it true that the panel was selected by the commissioner of jurors appointed under an unconstitutional law; that such officer must be deemed to be an officer *de facto* whose acts could not be brought in question in a collateral action or proceeding. It is the well settled rule that the title of an officer

*de facto* cannot be assailed collaterally; that the acts of such officer are valid in so far as the public and third persons are concerned. (*Thompson* v. *The People*, 6 Hun, 138, and cases there cited; *Dolan* v. *The People*, 64 N. Y., 495; *Carpenter* v. *The People*, 64 id., 483; *Dolan* v. *Mayor*, 68 id., 278, 279; see, also, 5 Wait's Actions and Defenses, 7, and the many cases there cited.)    As above stated, it matters not that one of the officers, through whose instrumentality the jurors were obtained, held his position under an unconstitutional law.    In *Thompson* v. *The People*, a challenge to the array was interposed — the alleged ground thereof being that the panel of jurors was selected by Dunlop, acting as a commissioner of jurors under appointment by the mayor of the city of New York in pursuance of an alleged unconstitutional law. The district attorney demurred to the challenge, and it was disallowed.    It was there said : " It is enough in all cases, where such a question is raised collaterally, that the person acting as an officer is discharging the duties of the office under color of right, evidenced by his possession of the office, and by exercising its functions under the power of an appointment or election, independently of the question of legal title; hence the court below was entirely right in holding that Dunlop's official acts could not in this case be questioned by challenge on the ground alleged."    To the same effect are the remarks of DANIELS, J., in Dolan's case (6 Hun, 499), where the objection urged was of the same character as in Thompson's case, and where the objection was raised by what was designated as a plea in abatement.    A like objection was raised in Carpenter's case (64 N. Y., 483), to wit: That the act of the legislature under which Dunlop was appointed commissioner of jurors was unconstitutional.    The court held that he was an officer *de facto*, whose acts were valid as to the public; that the validity of his appointment could not be drawn in question in this collateral manner.    In the *State* v. *Carroll* (38 Conn., 449), it was decided that one acting under color of an appointment by or pursuant to a public unconstitutional law, before it was adjudged to be such, was to be deemed an officer *de facto*, and that his acts as such were valid as to the public and third persons.    This subject received a very elaborate examination in this case on the authorities, as well those of older date, as of a more recent period.    In the *Commonwealth* v.

*McCombs* (56 Penn., 436), it was held that where a person holds an office under the apparent authority of a statute, as an officer *de facto*, his title could not be assailed collaterall‾, even though the statute be unconstitutional. But it is said that the office of recorder was well filled by an officer holding, under authority, good both in fact and in law; that it was not disputed that he was recorder and might well perform the duties pertaining to that office. But the point is urged that other rights and powers were attempted to be conferred on him by an unconstitutional law. The case, however, is not changed by this view of it; and for the reason that the recorder was an officer *de facto*, as regards the duties imposed on him by the law here challenged — as much so as if a new office had been thereby created and he had been appointed to perform its duties. He was not a usurper as regards the performance of those duties in any legal sense. A usurper is one who undertakes to perform official acts without any color of right. Here the recorder acted certainly under color of right. His action had the sanction of an apparent law, duly certified to him and to the people as a valid law of the State. It may, too, be here added that it stands undisputed that the legislature, under a certain condition or state of facts, had the constitutional right to pass precisely this law. Now, every law which the legislature may pass is presumed, when duly certified as a law of the State, to be valid. To meet this point a fact was averred which, if proved, would, as was insisted, render the law unconstitutional. But proof of such fact would be inadmissible. (*The People* v. *Devlin*, 33 N. Y., 269, and cases there cited; *Matter of N. Y. Elevated R. R. Co.*, 70 id., 351.) In this latter case Judge EARL puts the inquiry: "Can a court take proof for the purpose of showing a statute, valid and regular upon its face, to be unconstitutional?" and gives a negative answer. Then in executing such law, or in executing any law, indeed, duly certified as a valid law of the State, can it be maintained that the officer appointed to carry its provisions into effect acts in so doing without the semblance or color of authority? The cases above cited, and many others referred to in those cases, answer this question in the negative. It is repeatedly declared in the the decisions of the courts that an unconstitutional law gives the semblance or color of authority to its provisions. There was noth-

ing decided in *Lambert* v. *The People* (76 N. Y., 220) in conflict with the cases above cited. The precise point here under discussion was not in that case, and, as it seems, the views of the several members of the court on the subject then considered were not in all respects in harmony. We conclude, therefore, that the objection here urged against the indictment was properly overruled; and this whether it be deemed to be a challenge to the array or considered as a plea in abatement. In either case the ground of objection must be held untenable.

So far the case has been considered without regard to the provisions of the Code of Criminal Procedure. But if the case is to be determined under the provisions of this Code, which went into effect on the 1st of September, 1881, before the indictment was found (see sec. 962), and admitting the invalidity of the law of 1881, because of its alleged unconstitutionality, then section 238, the objection, being a challenge to the panel or array, was inadmissible.

This section (238) declares that no challenge can be allowed to the panel or to the array of the grand jury, but provides that the court may in its discretion discharge the panel and order another to be summoned in certain specified cases. This section, however, has application to proceedings to be taken before indictment found. The proceedings permissible to the accused after indictment are provided for in subsequent sections. Section 312 provides that the defendant may when arraigned move the court to set aside the indictment, or may demur or plead thereto. Sections 312 and 313 declare in what cases only he may have the indictment set aside. The specified grounds of such motion do not touch the case in hand. We are then brought to section 321, which declares that the only pleading allowed to the accused is either a demurrer or a plea. Section 322 declares the cases in which a demurrer may be interposed, and confines the demurrer to matters appearing on the face of the indictment. This section has here no application. Then section 332 provides for three kinds of pleas, to wit: Guilty, not guilty, and former conviction or acquittal. No other pleas are allowed by the Code. The objection in this case, therefore, considered even as a formal technical plea of matter in abatement, was inadmissible under the Code of Criminal Procedure. Thus, if it be admitted that the

case is to be determined under the provisions of the Code of Criminal Procedure the objection urged was properly overruled.

In view of the conclusions above reached it becomes unnecessary to examine the question raised by the defendant's counsel as to the validity of the act of June 16, 1881. (Chap. 532). We are of the opinion that the defendant was properly put to his plea to the merits.

He pleaded not guilty. On the trial, upon such plea and in the outset, the same objections were interposed to the panel of the petit jury as had been previously urged against the panel of the grand jury, to wit: That the jurors had been selected from the body of the county, under and pursuant to the act of June 16th, 1881 (chap. 532), which act, as was claimed, was in violation of the constitution and void in so far as it provided for the selecting and drawing of jurors in and for the county of Albany. This was in effect and in fact a challenge to the array of the petit jury. Was this objection or challenge properly overruled? The same answer must be given as was above made to the objection to the panel of grand jurors, that is: The jurors were selected from the right source — from the body of the county; they were duly drawn, summoned and returned to the court pursuant to the provisions of the law, by officers acting under the color of lawful authority; and they were in all respects duly qualified and competent to act as petit jurors in and for the county of Albany. According to the decisions above cited, the objection was properly disallowed, because the officers through whose action the jurors were selected, drawn and summoned were officers *de facto*, if not *de jure*; officers in possession of office, acting under color of lawful authority.

It should be added, perhaps that section 362 of the Code of Criminal Procedure fully answers the objection interposed to the panel of trial jurors if it be admitted that the case comes within its provisions.

It follows, therefore, that without considering the question as to the constitutionality of the act of 1881, the conviction and judgment appealed from must be affirmed.

WESTBROOK, J.:

Involving, as this case does, the constitutionality of the law (chap. 532 of the Laws of 1881), under which grand and petit

jurors are selected in and for the county of Albany, and unable to agree with my associates either in their conclusion that the conviction for the crime of grand larceny should be affirmed, or in the arguments assigned by them for such conclusion, it would seem to be proper that my reasons for such dissent should be stated.

On the 19th day of September, 1881, there was filed with the clerk of the county of Albany a paper purporting to be an indictment found by a grand jury of the Court of Sessions of Albany county accusing the appellant John Petrea of the crime of grand larceny committed at the city of Cohoes on the 2d day of August, 1881.

On the 21st day of March, 1882, Petrea was brought before the Court of Sessions of Albany county to answer to the alleged indictment. Seeking to avail himself of the constitutional protection (art. 1, sec. 6) that "no person shall be held to answer for a capital or otherwise infamous crime" (except as is stated in the section referred to), "unless on presentment or indictment of a grand jury" the accused filed a written plea or objection which denied the finding of an indictment against him by a grand jury, and claimed as the necessary corollary that the court had no jurisdiction to place him upon trial for an alleged infamous crime. No objection was taken by the people to the form or manner of presenting the question, and the court in rendering its decision did not put it upon the ground that a formal motion to quash the so-called indictment upon affidavit served had not been made. Nor would any such objections, if made, have been tenable. (*Clare* v. *The State*, 30 Md., 165; *Stokes* v. *The State*, 24 Miss., 621; *State* v. *Newhouse*, 29 La., 824.)

Very clearly, if the facts alleged in the writing presented to the court were in truth as therein set forth, and if the legal conclusions to be deduced from such facts were those maintained by the accused, then it must follow that he could not be placed upon trial nor convicted. The paper presented was not a plea "to an indictment," and as such controlled by section 332 of the Code of Criminal Procedure. It admitted no indictment, and denied that one had been found. Neither was it a challenge to the array of grand jurors, nor to an individual grand juror, and therefor controlled either as to form or substance by sections 238 and 239 of the Code of Criminal Procedure. The prisoner, so far as the case discloses,

was not present at the organization of the body called a grand jury, and had no opportunity to challenge it either as a whole or in part. The labors of the men composing it were ended, but in the possession of the tribunal before which the accused was brought was a paper said to be an indictment found by a grand jury which he was called upon to answer. The objection he made was radical; it was aimed at the jurisdiction of the court to place him on trial, and denied that he was indicted, upon the ground that no grand jury had presented the accusation upon which he was arraigned. No objection was urged to a form, none to an informality, in the exercise of a power conferred. The point made went much further. It insisted not only that the paper was no indictment, as it was claimed to be, but that its existence and presence was a violation of the fundamental law, and the attempt to try him thereon an outrage upon his rights as a citizen. Unless, then, the court is prepared to hold that every paper bearing the external form and impress of an indictment is one in fact, and that what it purports to be cannot be questioned by the party arraigned, then the written objection made to the alleged indictment, if true in the statement of facts and sound in its legal conclusions, could not possibly be overruled upon the grounds that it was not such a plea as the Code (§ 332) allowed, nor such a challenge to grand jurors as is provided for by other (338, 339) sections. The Code cannot be construed as intending to deprive a person of a great constitutional right; and if it be capable of any such construction, which it clearly is not, such a barrier would be futile, for it is a legal impossibility by a statute to deprive a party of his right to claim constitutional protection, or, to state the proposition more clearly with reference to this case, it is impossible under color of legislative enactment to organize a grand jury in a mode forbidden by the Constitution, and prevent, under the like color of legislation, the aggrieved party from being heard in assertion of his rights. Its author, and the body which adopted it as a law, intended no such absurdity as an attempt to prevent by an enactment defining and limiting the grounds of challenge to grand jurors or the pleas to be made to an indictment, when one is properly found, a preliminary inquiry by the court to ascertain whether there is in fact an indictment before it, to which the accused is compelled to answer. This proposition is so elementary and fundamental

that its soundness will be assumed, and attention will be given to the contents of the paper filed and the proceedings thereon.

The substance of the paper submitted by the prisoner to the court was that the alleged indictment to which he was asked to plead was not an indictment in fact, because not found by a grand jury of the county of Albany. That not a single one of the individuals named and called therein grand jurors was a grand juror in fact, because not a solitary member of that body had been selected, summoned or called according to law, but one and all had been selected, summoned and called under and in pursuance of chapter 532 of the Laws of 1881, which was "obnoxious to and in contravention of the Constitution of the State of New York, which forbids the passage by the legislature of a private or local bill for selecting, drawing, summoning or impanneling grand jurors, and that the said chapter 532 was not reported to the legislature by any commissioner or commissioners who had been appointed pursuant to law to revise the statutes."

By the replication to this plea the district attorney admitted and declared that the "said grand jury was selected and drawn pursuant to chapter 532 of the Laws of 1881, as in said plea stated; and as to the other allegations, matters and things in said plea stated, he denies the same, each and all; and this he, the said district attorney, prays may be inquired of by the country."

The prisoner filed a rejoinder to such replication in which he said "that all matters of fact in his said plea stated are true and constitute good and sufficient reasons for sustaining the same; and the said John Petrea joins issue upon the allegations in said replication stated, and of this he, the said John Petrea, puts himself upon the country."

The court then held that the legal presumption was in favor of the constitutionality of the law, and that the burden was upon the prisoner to show that the act of 1881 was not one reported to the legislature by the Commissioners of the Code. Whereupon the counsel of the prisoner "offered to prove by the clerk of the senate, by the commissioners appointed to revise the statutes, by the journal of the legislature of 1881, and by the original law itself, that the law in question was not reported to the legislature by any commissioner or commissioners who are or had been appointed pursuant to

law to revise the statutes." This evidence was objected to by the counsel for the people "as immaterial, incompetent and inadmissible," which objection was sustained and an exception taken.

. The defendant then offered to prove by the same kind of evidence mentioned in his first offer "that the said act of 1881 was introduced in the legislature by a member of that body who was not and never had been a commissioner appointed to revise the statutes or any statute." This offer was also overruled, and on the motion of the people "the balance of defendant's plea was overruled" and he was called upon to plead, the court saying: "In this case. we have to say that it was the defendant's duty to file his objection to the legality of this statute at the earliest practical moment after the indictment was found. He omitted to do that, and we think he should not be permitted to avail himself of the plea at this late day, and so hold." To this decision there was also an exception.

So far as the case discloses, the defendant did make his objection at the first opportunity. When brought before a court to answer an accusation of crime alleged to be an indictment, it was then, and only then, his duty to interpose his objection. Prior to that time, the act of 1881. and proceedings thereunder, did not concern him any more than they did any other citizen. It was enough to do just what he did do, to wit, upon his arraignment make the point. This was not only then done in the manner already mentioned, but after his offers and written plea were overruled he renewed them by a motion and an offer of proof. This was also, refused, and the several rulings of the court sharply present the following questions:

*First.* Conceding that the act of 1881 was not "reported to the legislature by commissioners who have been appointed to revise the statutes," is the enactment for that reason unconstitutional?

*Second.* Had the accused the right to show that it had not been so reported?

*Third.* Conceding that the statute is unconstitutional, and that the so-called grand jury, which undertook to find the alleged indictment was organized thereunder, is the defendant without remedy?

These questions will be discussed in the order they have been stated.

In the consideration of the one first propounded, it is necessary

to have clearly in mind the constitutional enactment. By section 18 of article 3 it is declared: "The legislature shall not pass a private or local bill in any of the following cases: * * * Selecting, drawing, summoning or impanneling grand or petit jurors;" and by section 25 of the same article it is provided that "sections 17 and 18 of this article shall not apply to any bill, or the amendments to any bill, which shall be reported to the legislature by commissioners who have been appointed pursuant to law, to revise the statutes."

These constitutional provisions are clear. "A private or local bill * * * selecting, summoning or impanneling grand or petit jurors" could not be passed unless the same was "reported to the legislature by commissioners who" had "been appointed pursuant to law to revise the statutes." There may possibly, owing to the peculiar phraseology of section 25, be some doubt whether or not the bill to be introduced, and all amendments thereto as well, should be reported by the commissioners. The act, however, certainly requires that the bill, which, when passed and approved, becomes a law, must be reported by such commissioners, and whether amendments to such bill, in the course of its passage, must also emanate from the same source, or could be adopted by the legislature, upon the suggestion of any of its members, is of no importance to the question before us. The literal reading of the section would seem to exempt only such bill and such amendments as were reported by the commissioners, from the prohibition contained in section 18; while the intention, probably, was to give the legislature power to amend the bill when reported from the commission, as it might see fit. Speculation as to this point is, however, useless. The act of 1881 is not an amendment to a bill but is an amendment of a law in full force, at the time of the passage of the former, and as the right of amendment, unless reported by the commissioners, existed, if at all, only whilst the report of such commission was in the form of a bill, by no possibility can section 25 be held to confer the power to so amend the work of such commission after it had become a law, as to make a valid legal enactment giving to the county of Albany a law, applicable to it, and to it only, for "selecting, drawing, summoning or impanneling grand or petit jurors."

Having demonstrated the proposition that the act of 1881, if *it*

gave to the county of Albany a local jury law which had not been reported by the commissioners appointed to revise the statutes must be unconstitutional and void, the next inquiry is, what does the act seek to accomplish?

The second article of chapter 10 of the "Code of Civil Procedure," as adopted by the legislature, provided a "mode of selecting, drawing and procuring the attendance of trial jurors in ordinary cases," but had no application to grand jurors. By it the supervisor, town clerk and assessors of each town made out the list from which such trial jurors were to be drawn. By section 1041 "each ward of the city of Albany or Utica is considered a town for the purposes of" that "article, and the supervisor and the assessor of that ward must execute the duties of the supervisor, town clerk and assessor of a town as prescribed" in the preceding sections of that article. Special provision is also made in regard to other cities, but this is of no importance to the present discussion and will not be stated.

The act (chap. 532 of 1881 undertakes to amend section 1041 of the Code by declaring that, "in the city of Albany, the recorder of said city shall perform the duties imposed by this title" (that is to say, the provisions of the Code in regard to the obtainment of trial jurors) "upon the supervisor, town clerk and assessors of towns;" and that "in Albany county, grand jurors shall hereafter be drawn from the box containing the names of petit jurors selected for said county in the same manner as petit jurors, and hereafter no separate list of grand jurors shall be prepared for said county."

The changes made by this statute, if valid, are radical. To the recorder of the city of Albany only, and in contradistinction, as it is believed, of the powers of that officer in any other city in the State, is confided the duty of preparing the jury list; and from such list, when prepared by him, both the grand and petit jurors are to be drawn. Prior to its enactment the recorder had nothing to do with the preparation of the lists from which either was selected. The preparation of that from which the trial jurors were to be obtained was, by the Code of Civil Procedure, devolved upon other officers, and that of the grand jurors, except in the city and county of New York, was to be prepared by "the supervisors of the several counties of this state * * * at their annual meeting in each

year" (3 R. S. [6th ed.], 1015; 3 R. S. [7th ed.], 2558), the two lists being separate and the ballots for the drawing kept in separate and distinct boxes.

These new provisions applicable to the city and county of Albany alone, and to no other county of the State, very clearly make for it a local law for the selection, drawing, summoning or impânneling of both grand and petit jurors, and' unless reported as a bill by the commissioners to amend the statutes was clearly unconstitutional, because the passage of any such bill by the legislature was strictly forbidden. Was the bill, which is claimed to be a law, a report from the commissioners appointed to revise the statutes? This brings us to the second question which this case involves, and that is : Had the accused the right to show that it had not been so reported?

We have already seen that the Court of Sessions was powerless to try or to punish the accused for the commission of the alleged crime unless he was properly accused by a legal grand jury through and by the form of an indictment. It is useless to argue that a body of men, no matter of whom composed, has, either of its own volition or upon the summoning and call of other than the authority of the law, the right to resolve itself into a grand jury ; and when professing to be thus organized to accuse anyone, by what it may call an indictment, of an infamous crime and subject him to a trial therefor. This proposition is elementary and needs neither argument nor authority to uphold it. If this be sound, as will readily be conceded, it is proper to ask, can a legislative enactment forbidden by the Constitution become operative upon the citizen because the court to which objection thereto is made requires extraneous evidence to show that the act is within the constitutional prohibition? He who seeks to uphold the judgment rendered in this cause must show that the question propounded requires an affirmative answer, and that courts are powerless to determine whether or not an alleged law has been passed despite a constitutional provision forbidding its enactment. The offer upon the trial was so broad and specific as to include every species of evidence attainable upon any such subject as that involved. It included the inspection of the original bill, the journals of both houses, the evidence of the clerk of the senate, of members of the commission and of individuals, and all was excluded upon the ground that the party who was then for the first time arraigned was too late

with his objection, and his offer of proof in its support. If the act had professed to have been passed because reported by the commissioners, or if the inquiry proposed had impugned the good faith of the legislature by imputing to it some motive or intent other than that evinced by the language of the enactment, the question might be more embarrassing. No proof, however, tending to impeach either legislative declaration or motive was offered. The desire was simply to show that the alleged law, when reported as a bill, did not emanate from the only source possible under the Constitution, the commissioners appointed to revise the statutes. So far from attempting any discourtesy to the legislature by an imputation upon its motives or its truth, the offer of evidence was an appeal to its own declaration upon its original bill, and to its own record of its proceedings, which it had itself approved. The offer was rejected, and the decision refusing the production and inspection of "the original act itself" was directly contrary to that of the Court of Appeals in *People* v. *Commissioners of Highways of Marlborough* (54 N. Y., 276), and the offer of proof by the production of the journals of the two houses was certainly proper. (*Purdy* v. *The People*, 4 Hill, 384; *De Bow* v. *The People*, 1 Denio, 14; *Warner* v. *Beers*, 23 Wend., 166; see note, Cooley's Const. Lim. [4th ed.], 164.) It is not necessary, however, to multiply authorities upon what seems to be self-evident. It is clearly the prerogative of the court to ascertain and decide whether in the passage of any bill a constitutional provision was violated. This duty and power so clearly devolve upon the court that the enunciation thereof is sufficient. No case holding the contrary was cited, and it is believed that none can be found. *In Matter of Elevated Railroad Company* (70 N. Y., 327, 351) nothing opposed to it was decided. The law under consideration in that case was general in its terms, applicable to all elevated railroads in the city and county of New York, and its constitutionality was attacked upon the ground that it was not what it professed to be, and really was a special statute for the benefit of a particular corporation. It was of such an attempted inquisitorial inquiry into the motives of the legislature in opposition to the words of the law that Judge EARL wrote when he held that such an inquiry could not be tolerated; but neither he, nor any judge, has ever held that when the Constitution requires a bill to

be reported through a particular channel to become a valid law that an inquiry to ascertain its source could not be made. The adoption of the principle claimed by the people in this case would nullify the Constitution, for then, in spite of its mandate to the contrary, there could be among the statutes of the State, an unconstitutional law in fact, but still to be obeyed and enforced in spite of the Constitution, because a judicial *dictum* forbade inquiry as to its origin. In a State, the fundamental law of which confers and limits power, no principle having such a result can be upheld. It therefore follows that the rejection of the offers was clearly erroneous, notwithstanding the attempt to sustain such rejection upon a ground not considered by the court below in announcing its decision.

We are now brought to the third question which this case involves. Conceding the unconstitutionality of the act of 1881, under which the so-called grand jury presenting the paper called an indictment was organized, is the defendant without remedy? It is gravely argued and claimed by the people that he is. It is said that a body acting as a grand jury, every one of its members having the personal qualifications requisite for a grand juror, having presented to the court the paper called an indictment, it became one in fact, to which the prisoner was bound to answer upon the merits, and upon which he could be tried and convicted. Is this sound?

To state such a proposition, it would seem, is to answer it. Why, if it be correct, have any law for selecting, drawing or summoning a grand jury? Why should not the court simply direct the sheriff, or any other officer, to go out and summon such men as he pleases, or why, even, should not the court direct him who to summon, without the cumbersome machinery of a general list of names, the drawing of the persons to serve in the presence of witnesses, and the observance of any of the safeguards of statutes? No one would tolerate or uphold such a procedure, for such orders by the court would not only be without the color of law, but also against its commands; and yet a case depending for support upon a like violation of legal principles is before us. Under and by what authority was the so-called grand jury, which professed to accuse the defendant of an "infamous crime," organized? It was a body of men drawn from a list of names made out and selected by an officer to whose office

no such duty belonged, and which names, in defiance of law, if the act of .1881 is unconstitutional, were improperly and unlawfully mingled in one box, from which both grand and petit jurors were drawn. Not only was the recorder of the city of Albany unauthorized to prepare any such list for that purpose, but he was positively forbidden to make it, for no person can undertake to execute the machinery of a statute, which the legislature is forbidden to adopt, without having the constitutional forbidding made applicable to himself. If, then, the alleged indictment of the defendant and his conviction are to be upheld, they must be upon some principle, which in spite of the Constitution, shall uphold in the county of Albany, for the disposal and trial of this case not only, but of all others, a system for obtaining both grand and petit jurors created by a local statute. Is such a proposition maintainable? The claim is that it can be by adjudged cases, upon the theory that what an officer does under color of legislative authority will, as to persons affected by it, be upheld. In other words, that the machinery of a supposed law for the obtainment of jurors in the county of Albany shall be kept in operation, though forbidden by the Constitution, upon a legal rule, sanctioned by judicial authority, which deprives the Constitution of its power and makes inoperative and void one of its most positive commands. Let us see if any court has ever so held.

Preliminary to any detailed examination of the cases to which we have been referred, it is proper to enunciate the principles upon which they all depend, and to show their inapplicability to the one before us. Those principles are: First. That mere irregularity by an officer in doing that, which he is authorized to do, will not vitiate the thing done, and second, when duties properly and legally belonging to the office of which an individual is in possession, have been performed by such incumbent, that which has been thus done will be upheld as to the parties affected thereby, and courts will not, in collateral proceedings, inquire into the right of the individual to hold the office, and to discharge the duties which lawfully appertain to such office.

No such principles are involved in the case before us. It is not urged that any officer has irregularily exercised powers with which he was clothed, but it is claimed that an officer has not only exer-

cised a po'wer unconferred, but also that as such exercise of power was under color of a pretended law, which the Constitution of the State declared to be inoperative and void, that which he undertook to do was forbidden by the fundamental law of the State, because if the enactment of the so-called statute law is forbidden, every act in execution thereof must be equally forbidden. Neither does the accused question the title of the officer (the recorder of the city of Albany) to the office he filled. He admits that such officer properly held the official position, under color of which was prepared the pretended jury list, from which the so-called grand jury was drawn. The claim is, that the duty of preparing such list and the right to prepare it did not belong to the office which the recorder held, and, also, that as he undertook to prepare such 'list in the execution of a supposed law, the enactment of which the Constitution forbade, that which he did do was in defiance of the supreme authority of the State — the will of its people embodied and declared in its Constitution.

It will readily be seen, if the thread of this opinion has been followed, that the points in this discussion have been correctly stated. In examining, then, the cases cited to sustain the conviction and judgment appealed from, no search will be made to see if the accused can avail himself of a mere irregularity in the exercise of a power actually conferred upon an officer, nor to learn that he must be remediless if he only questions the discharge of duties properly belonging to an office, upon the ground that its possessor had no legal title, for all this is at once conceded; but we are gravely asked to seek for a solemn opinion, or some judicial *dictum* upholding as a sound/legal proposition, that when an officer performs an act not appertaining to his office, and which, also, he is forbidden to do, such action when injurious to personal rights cannot be questioned, because the officer has assumed to do it, and in fact has done it. This is no strained statement. Even the non-professional mind will recognize its accuracy, and having made it, some of the cases cited will be examined.

In *Friery* v. *The People* (2 Keyes, 424), the challenge was to the array of trial jurors. Such objections (pages 433, 434) related to the impartiality of the sheriff who summoned them, and the alleged non-observance of all required forms in the drawing. The

court held that these objections were unavailable; that the provisions of the statutes (page 452, 453) were only "directory to those whose duty, it is to select, draw and summon. * * * * The omission to properly work the statute machinery by the drawing and summoning officers is a question between the people and those officers."

The brief extracts from the opinion of Judge WRIGHT, just given, show that in Friery's case the officers authorized to draw and summon the jurors had performed that duty, and that the machinery of the law had been worked by the officers charged with that duty. In the case before us, if the act of 1881 be void, that which was done was entirely unauthorized. There was no "machinery" of any law worked, because there was no law making any; there was no list of names prepared from which the selection of so-called jurors was made, for that which is against the fundamental law, is such an absolute nullity that it has no existence as a fact capable of recognition as such by any court. That which is called by those names is improperly so designated. They may have borne the semblance and likeness of the things by which they are named, but an appeal to the fundamental law strips off the mask which gives the appearance of substance and reveals the hollowness of any such pretense.

In *Carpenter* v. *The People* (64 N. Y., 483) the point presented was that one Douglass Taylor, who was the *de jure* commissioner of jurors in and for the city and county of New York, had not selected the grand jury which indicted the prisoner, but one Thomas Dunlap, who was *de facto* commissioner, had performed that duty. The decision of the court was, that as to the office of commissioner of jurors appertained the right of selecting, such selection was valid because made by an individual holding the office.

In *Dolan* v. *The People* (64 N. Y., 485) the same question which arose in the Carpenter case was made, with the point added, that among the names upon the list from which the grand jury was obtained were a few which had been improperly placed thereon. The decision of the court upon the first point was similar to that made in the Carpenter case; and as to the second it held, among other things (page 493), that "no authority can be found holding that in such a case the whole list is irregular and null, so that none

of the persons on it could be drawn for grand jurors, because a few names, without fraud or design, were, as we may assume, by accident or oversight also put upon it."

In the case before us there was neither "accident or oversight." In the preparation of the list every name was placed upon it by forethought and design, and the whole list is irregular and void because made without and against the authority of law.

In *Cox* v. *The People* (80 N. Y., 500) it was held, "mere irregularities in the drawing of grand and petit jurors do not furnish a ground for reversing a conviction unless it appears that they operated to the injury or prejudice of the prisoner;" and that when a challenge to the array of trial jurors had been overruled because not verified an offer by the court subsequently made to receive evidence in support of such challenge, and its declination by the prisoner, precluded him "from insisting upon the exception to the ruling," and that he "must be regarded as having abandoned his challenge."

It is impossible, however, to examine in detail every case to which we have been referred. If the distinction hereinbefore stated between the right to inquire collaterally into the title of an incumbent of an office and the right to question acts which do not appertain to the office, under color of which they are done is remembered, none presents any difficulty. An individual may possess an office by an unconstitutional law; but if he only performs the acts, which the officer may do, such acts, when done, are valid because he is a *de facto* officer. When, however, an individual holding an office either *de facto* or *de jure*, or both, does an act which his office does not authorize to be done, that action cannot be sustained. A man, for example, in possession of an office of a justice of the peace, though not its rightful incumbent, may render in a case within the jurisdiction of a justice of the peace a judgment valid between the parties thereto, but he cannot, even by consent, render a valid judgment in an action which the office is forbidden to hear. He who is in possession of the office of recorder of the city of Albany may do every act appertaining to that office, but he cannot exceed the powers conferred by law upon the office; and to this proposition it is scarcely necessary to add the statement that power attempted to be conferred by an unconstitutional statute is as much unconferred as if the attempt to confer it had not been made. The power

and authority of an office must be conferred by valid laws, and there is no legal principle which justifies the assumption of power upon the ground that it has been assumed. The adoption of such a rule would be utterly subversive of personal rights and place everyone at the mercy of an official who chose to exercise power beyond that which had been conferred. Let us see the result of its adoption in this case. The point has already been alluded to in the general course of argument, but a more full reference thereto is justified by its importance.

That the Constitution of the State has positively forbidden the enactment of a local law operative in and applicable to the county of Albany only, for "selecting, drawing, summoning or impanneling grand or petit jurors," unless as a bill it was reported to the legislature by "commissioners who have been appointed pursuant to law to revise the statutes," will be conceded. That the section of the Constitution thus forbidding such enactment was intended to be operative is known from its language, and the reasons for its adoption are shown by the report of the committee (Messrs. Brooks, Kernan, Howland and Tracy) which reported it to the constitutional commission. It was designed to secure uniformity in the administration of justice throughout the state, and to prevent the passage of a local bill, which might be aimed at its corruption. The origin of the act is also as a fact too well known to suggest any doubt as to its source, or an intimation even that it was reported from the commission to revise the statutes. If, then, the act of 1881, though within the Constitutional forbidding, is still to be upheld, not only for the present case, but for all others arising within the county of Albany, upon any of the theories upon which it has been sought to be maintained (other than those upholding its constitutionality) what becomes of the constitutional provision? Instead of being operative, it has become a dead letter — instead of being observed and kept, it has become of no account — instead of the Constitution being the superior of the courts which it has created, judges composing them have become its superiors, and by the adoption of legal rules have made laws higher than the Constitution. To no such doctrine should any judicial sanction be given, and though in this case the supposed law may have worked no individual injustice, and may never in any, it is impossible to sustain what has been done there-

under upon any such ground. That which the Constitution declares shall not be done, when done, can never be upheld, even though mere abstract justice has been accomplished. The act is against public policy, subversive of government, and therefore never to be sanctioned, but should be promptly pronounced inoperative and void by judicial decision.

The proceedings down to the time of the impanneling of the alleged trial jury have now been examined, and such examination leads me irresistibly to the conclusion that the Court of Sessions erred in overruling the objections taken to the alleged indictment, and in excluding the evidence in support thereof. The same questions were again made upon the impanneling of the trial jury, and the rulings were also the same. These it will be unnecessary to examine, as the reasoning already given is applicable, and the last point made — that none of the questions which have been considered are presented by the appeal — will now be considered.

It is insisted that section 517 of the Criminal Code only brings before the court for review such matters as by section 485 form a part of the judgment roll. Grant this, and what follows? By section 485 " the bill of exceptions, if there be one," forms a part of such roll, and as one was made and forms a part of the roll in this case, which shows that the proceedings and decisions hereinbefore detailed were had and made, we have all before us. It is absolutely impossible to separate the arraignment and proceedings thereon from the trial, for they were a part thereof, as completely as that which transpired after the trial jury was impanneled. The arraignment, the objections to the alleged indictment, the offer of proof to sustain them, the plea to the merits, and all that then occurred, followed consecutively upon the same day, and all formed a part of one trial, the history of which we have before us, and no one exception then taken is more completely before us than any other. Section 485 of the Code speaks of no exceptions, apart from " the bill of exceptions, if there be one," being contained in the roll of judgment. It does, it is true, enumerate copies of certain papers as also forming a part of such roll, but as to all exceptions which come before the court on appeal, they must be contained in the bill of exceptions. Neither is it true that section 455 prevents exceptions of this character from forming a part of

this bill. That section expressly provides that an exception " on the trial of an indictment  *  *  may be taken by the defendant, ' to a decision of the court" in deciding any question of law provided the "substantial rights " of the defendant are thereby " prejudiced." It is, it seems to me, a contracted view of statutes and personal rights, which thus seeks to hamper this appeal. The ruling of the court below involved one of the most sacred rights of a man — his right to be tried for a crime only when indicted by a grand jury organized according to law. When this prerequisite to a trial, and conviction was not obtained, and a human being is in prison without this safeguard of his rights having been observed, this court should rather stretch than curtail its power to review.

It remains with me simply to enunciate in conclusion my opinion that the judgment appealed from should be reversed. It would be more pleasant to agree with associates whose learning and intergrity I respect, than to differ from them, but a most careful study in this case of the questions involved in the maintainability of the jury law of Albany county, and also in others argued at its court of Oyer and Terminer, leads me irresistibly to the conclusion that chapter 532 of the Laws of 1881, by which the jury system for that county purports to be created, is unconstitutional and therefore void.

Judgment and conviction affirmed.